THE STATE, EX REL. MARGARET BEDERSKI, RELATOR, v. THE POLICEMEN'S AND FIREMEN'S PENSION BOARD OF THE CITY OF NEWARK, RESPONDENT.

Submitted January 29, 1926—Decided May 4, 1926.

B., a policeman of the city of Newark, died on May 11th, 1923, from a revolver shot while off duty. His widow applied to the pension board of the city of Newark for a pension. The application was denied. *Held*, that under chapter 160 of the laws of 1920 (*Pamph. L.* 1920, *p.* 324) that the widow was entitled to a pension under the provisions of said act, even though B. may have been engaged in an unlawful enterprise at the time of his death.

On rule to show cause why a peremptory or alternative writ of *mandamus* should not issue.

Before Justices TRENCHARD and KATZENBACH.

For the relator, *John W. McGeehan, Jr.*

For the respondent, *Jerome T. Congleton* and *Charles M. Myers.*

The opinion of the court was delivered by

KATZENBACH, J. This case is before us upon a rule to show cause why a peremptory or alternative writ of *mandamus* should not issue to command the policemen's and firemen's pension board of the city of Newark to grant to Margaret Bederski, widow of Peter Bederski, for the benefit of herself and children, a pension of $1,000 per year from the date of the death of Peter Bederski, who was a policeman in the employ of the city of Newark. Bederski died on May 11th, 1923.

The record contains the application of Mrs. Bederski for the pension, the minutes of the policemen's and firemen's pension board relative to the application, and the testimony

covered by the applicant. The record also contains certain stipulations and admissions made by counsel for the respective parties. From the record, as thus constituted, the following facts appear:

Peter Bederski was appointed a member of the police department of the city of Newark on September 16th, 1919. He continued to be a member of the department until his death on May 11th, 1923. His salary at the time of his death was $2,200 per year. He was not under suspension or under any charges at the time of his death. At no time during his service had any charges been preferred against him. He had not married the petitioner after he had attained the age of fifty years. His widow has not remarried. He left a widow and three infant children, aged nine years, seven years and one month, respectively. All deductions from his salary provided for by chapter 160 of the laws of 1920, relating to the policemen's and firemen's fund, had been made up to the time of his death.

The following are the facts relating to the death of Bederski: On May 10th, 1923, at eight P. M., when he was not in uniform or on duty, he left his home. He did not tell his wife where he was going. He was found upon his door step at four o'clock in the morning of May 11th, 1923, suffering from a revolver shot, from which he died at about ten-thirty A. M., on that day. Bederski, on the morning of May 11th, 1923, was in the company of Adam Dresch, Charles Hetschel, Louis Gimmelstob and Dan Magowan. They had met for the purpose of going to a warehouse, known as the Bernstein warehouse, in the city of Newark, where whiskey (understood to have been owned by Bederski) was stored. While in the warehouse a policeman by the name of Louis Thomas entered the premises. Several shots were fired in the warehouse. Two hours after this Bederski was found upon the porch of his home in the condition mentioned. No witness could testify that Bederski had been shot in the warehouse. At a criminal trial arising out of the above occurrence an owner of the warehouse testified that Bederski had

no liquor stored in the warehouse. Before his death Bederski told his wife he thought a policeman had shot him. Upon these facts the board refused to allow the pension.

The respondent contends that Bederski's widow is not entitled to a pension because Bederski met his death while engaged in an unlawful enterprise; but, assuming for the purpose of argument that he did meet his death while engaged in an unlawful act, we are unwilling to hold that his widow is for that reason deprived of the right to receive a pension from the fund created for this purpose. The third section of chapter 160 of the laws of 1920, which is the statute upon which Mrs. Bederski bases her application, provides as follows:

"The widow or children or sole dependent parent of any member of the police or fire department, having paid into the fund the full amount of his annual assessment or contributions, who shall have lost his life in the performance of his duty, or who shall die from causes other than injuries received in the performance of duty, shall receive a pension equal to one-half of the salary of such member at the time of his death, not exceeding $1,000."

It will be observed that a pension is given to the widow * * * of any member of the police department who has paid into the fund the full amount of his annual assessment or contribution, who shall have lost his life in the performance of his duty, or who shall die from causes other than injuries received in the performance of duty. Bederski died from causes other than injuries received in the performance of duty. The language of the statute plainly includes a case like the one under consideration. It may be that the draftsman of the act, if he had foreseen a state of facts like the one herein presented, would have so drafted the act as to make it inoperative in the present case. But the act is not so drawn. Its language is plain. Notwithstanding Bederski may have been engaged in a criminal undertaking when he actually received the wound which caused his death, his widow is entitled to a pension. The cases of *Scott* v. *Jersey City,*

68 *N. J. L.* 687, and *Leffingwell* v. *Kiersted,* 74 *Id.* 407, cited by the respondent, are not in point. They were decided under a statute by which a pension was to be paid, if a fireman should be fatally injured while in the performance of, or attempting to discharge, his duties. The provisions of the act under review are broader.

The respondent further contends that to grant a pension under the facts revealed in the instant case is against public policy. The case of Smith *v.* Metropolitan Life Insurance Co., decided in October, 1925, in the appellate division of the New York Supreme Court, is cited to sustain this contention. In this case a man took out a policy of life insurance payable to his wife. He then murdered his wife. He was convicted and executed. His personal representatives demanded the payment of the policy which by the death of his wife had become payable to the insured's estate. It was held that to pay the proceeds of the policy to the personal representatives of the deceased husband's estate would be contrary to public policy as the act of the husband in taking the life of his wife had enriched his estate. This decision follows many other decisions of like import. They differ materially from the present case. Bederski did not enrich his estate, assuming he would not have been killed if he had not visited the storehouse. He was the victim. A wife is not deprived of the proceeds of an insurance policy payable to her merely because her husband may be killed while engaged in an unlawful enterprise unless the policy so provides. In the case referred to by the respondent it was the act of the insured which made the policy payable to his estate. In the present case it was not the act of Bederski in going to the warehouse, if he did, which caused his death, but the act of someone else in inflicting the wound from which he died. The visit to the warehouse was not the proximate cause of Bederski's death. The statute under which Mrs. Bederski applies for a pension evinces a legislative intent to provide for the care and maintenance of members of the police and fire departments in case of disability, and for their widows,

children and sole dependent parents in the event of death. To insure such benefits there is paid into the fund a certain percentage of their salaries. It is, in effect, protection by insurance. The act should be construed liberally to effectuate the legislative intent. It would, we think, be wrong to exclude a widow, innocent of any wrong-doing, from a pension which the act by its express provisions awards her where her husband dies from causes other than injuries received in the performance of his duty.

A peremptory writ of *mandamus* directing the payment of a pension to Mrs. Bederski pursuant to the provisions of the statute is awarded.