EDWARD M. SALLEY, PLAINTIFF-APPELLEE, v. FIREMEN'S AND POLICEMEN'S PENSION FUND COMMISSION AND THE CITY OF JERSEY CITY, DEFENDANTS-APPELLANTS.

Submitted October 3, 1939—Decided February 13. 1940.

Before Justices TRENCHARD, CASE and HEHER.

For the defendants-appellants, *James A. Hamill* (*Charles A. Rooney,* of counsel).

For the plaintiff-appellee, *Milton, McNulty & Augelli.*

The opinion of the court was delivered by

TRENCHARD, J. This case was tried below and is submitted here on a stipulation of facts in words and figures as follows:

"On June 4th, 1936, by assignment in writing, George DeForge assigned his rights in and to payments for forty-four consecutive months, commencing July 1st, 1936, which may have been due subsequent to said assignment from the Firemen's and Policemen's Pension Fund of the City of Jersey City. Said George DeForge became a member of the Police Force of the City of Jersey City on July 16th, 1915, and served therein until his retirement for disability not arising out of line of duty on September 25th, 1933; during his service in the police department said George DeForge made the usual contributions to the Firemen's and Policemen's Pension Fund of the city, and at the time of his retirement on September 25th, 1933, he was awarded a pension at the rate of $1,500 *per annum,* payable monthly at $125 per month on the first of each month. This pension was paid pursuant to the provisions of Chapter 160, *Pamph. L.* 1920, under which the Firemen's and Policemen's Pension Fund Commission was created; deductions were made from the pension payments at the rate of four per cent. for dependents, so the net payment was made to the said George DeForge of $120 per month; on November 26th, 1935, the said George DeForge was indicted by the grand jury of Hudson County on a charge of murder in the first degree, there being three indictments returned of first degree murder in connection with the deaths of Marie DeForge, James Deveny and Philip Missingharter. The said George DeForge retained the plaintiff herein, Edward M. Salley, as his attorney, and on June 1st, 1936, said George DeForge pleaded *non vult* to a charge of murder in connection with the indictment returned against

him for the death of Marie DeForge and was sentenced by Judge Thomas F. Meaney, sitting in the Court of Oyer and Terminer of Hudson County to be confined to State's Prison for the rest of his natural life; the said George DeForge was forthwith and still is confined in the State Prison at Trenton; notice of the assignment to the plaintiff was given to the Firemen's and Policemen's Pension Fund Commission on the 4th day of June, 1936, and thereafter monthly payments of the pension moneys were made to the plaintiff; the last payment was made on September 1st, 1938, and subsequent to that date no further payments were made because of the provisions of Chapter 221 of the Laws of 1938, page 516, which is entitled 'An Act to prohibit the payment of any pension or subsidy by this State or by any municipality or school district of this State to any person for the period during which he is confined in a penal institution as a result of conviction of a crime involving moral turpitude and supplementing subtitle 1, title 43 of the Revised Statutes.'"

Such is the full extent of the stipulation as to the facts upon which the case was tried and is here presented.

In this posture of affairs the plaintiff instituted this suit in the District Court to recover for the installment payments alleged to be due on the first days of October, November and December, 1938, and the first day of January, 1939, at the rate of $120 per month, all aggregating the sum of $480. The court, sitting without a jury, rendered judgment for the plaintiff for the full amount for which he sued.

The defendants' appeal is based upon the contention that the action was barred by the Statute, *Pamph. L.* 1938, *ch.* 221, *p.* 516.

We think that defendants' contention is sound.

The statute of 1938 became effective May 25th, 1938, and provides as follows:

"No pension or subsidy shall be paid by this State or by any municipality or school district of this State to any person for the period during which he is confined in a penal institution as a result of conviction of a crime involving moral turpitude, and such person shall lose all right to so much pension or subsidy as he would receive or be entitled to receive

had he not been so confined; provided, that nothing herein contained shall prevent the payment of the pension for the sole benefit of the mother, father, wife or minor children of the person so confined in a penal institution if the board or commission administering the pension fund shall determine that such pension is necessary for their maintenance, and, thereupon, the board or commission shall provide for the payment to the aforesaid person or persons so determined to be entitled to the benefit of the pension."

The language of this statute is plain and leaves no room for doubt as to the intention of the legislature. It does not limit its terms to crimes committed or confinement in penal institutions commenced after the act took effect, nor does it limit its terms to pensions to be awarded after the act took effect. The gist of the statute is payment, and the mandate of the legislature is clear that no payment of such pension shall be made during confinement; and it further is clear that the person so confined loses all right to so much pension as he would receive or be entitled to receive had he not been confined. We believe that the trial court erred in holding that the statute did not apply to payments of pension due after the act became effective where the pension had been awarded prior to the effective date of the act. The trial court evidently failed to consider that the act referred to did not bar the pension *ab initio* but did preclude the pensioner from recovering payments due in the future during the time of his confinement in the state prison.

The right of the legislature to control future payments of pension of this nature is clear. The statute under which this pension was granted was chapter 160, *Pamph. L.* 1920. This statute permits retirement of municipal firemen and policemen at half pay under certain conditions and provides, in the fourth paragraph, the source of the pension fund which consists partly of deductions in salary and the balance to be raised through tax moneys as set forth in this paragraph as follows:

"The municipality shall raise by taxation and pay into said fund yearly an amount equal to four *per centum* of the total salaries paid to the members of the police and fire depart-

ments. There shall also be added to such fund the following moneys: All fines imposed upon any member of the police and fire department; all moneys given or donated to such fund; all moneys deducted from the salary of any member of the police or fire department on account of absence, or loss of time, and one-half of all rewards paid for any purpose. In case there shall not be sufficient money in said pension fund created as aforesaid, the common council or other governing body shall include in any tax levy a sum sufficient to meet the requirements of said fund for the time being."

The act further provided, in the sixth paragraph, that all of the funds of the pension commission shall be received and paid over to the treasurer of the municipality.

It will be observed, therefore, that tax moneys are used for the payment of these pensions, and of course, the legislature retains full control over disbursements of such tax moneys. There is no contractual relationship between the retired policeman on the one hand, and the pension commission and the city or state upon the other hand, and hence the pensioner's rights are governed by the acts of the legislature of this sovereign state.

The law governing pensions of this character has been passed upon by our courts in a number of cases, such as *Bader* v. *Crone,* 116 *N. J. L.* 329, wherein a retired policeman challenged the right of the legislature to increase the deductions from his pension for dependents over the amount which was fixed at the time of his retirement. Our Supreme Court held that the legislature had the right to enact this legislation, and the court stated:

"It appears to be the general rule, and is certainly the rule in this state, that compulsory deductions from the salaries of governmental employes by the authority of the government for the support of a pension fund create no contractual or vested right between such employes and the government, and neither such employes nor those claiming under them have any rights except their claims be based upon and within the statute governing the fund. *Bennell* v. *Lee,* 104 *N. J. L.* 453; *Plunkett* v. *Board of Pension Commissioners,* 113 *Id.* 230; *affirmed,* 114 *Id.* 273."

See, also, *Passaic National Bank and Trust Co.* v. *Eelman,* 116 *N. J. L.* 279, and *Turner* v. *Passaic Pension Commission,* 112 *Id.* 476. It is seen, therefore, that the control of future installment payments of a pension such as that now under consideration, was vested solely in the legislature, and chapter 221 of *Pamph. L.* 1938, is legally unobjectionable as applied to the present case.

A somewhat similar question was considered by the United States Supreme Court in *Dodge* v. *Board of Education,* 302 *U. S.* 74-81; 82 *L. Ed. S. Ct.* 57, wherein the court held that legislation which decreased annuity payments to retired teachers was not in contravention of the United States Constitution and did not deprive the teachers of any vested right, and affirmed the action of the Illinois Supreme Court (364 *Ill.* 547; 5 *N. E. Rep.* (2d) 84) which held that such pensions do not involve contractual relationship. In the Dodge case the United States Supreme Court said that "In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute [in this case chapter 160, *Pamph. L.* 1920] * * *. The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption. If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right."

The fact that the pension under the stipulated facts was to be paid out of funds derived partly from moneys raised by taxes and partly from moneys deducted from salaries of the policemen did not render the pension a contract. 12 *C. J.* 1020, § 647, and cases cited.

Our conclusion is that DeForge, under the stipulated facts, had no contractual obligation with respect to the future installment payments of pension which he could legally assign to the plaintiff in view of chapter 221, *Pamph. L.* 1938; nor could he, by any act of his own, assign to the plaintiff any right to preclude the legislature of the state from

enacting laws with respect to his future installment payments, and thus grant to the plaintiff greater rights than he, himself, possessed. In view of the direct mandate of the legislature, the defendants are powerless to pay any future installment payments either to DeForge or his assignee, and the trial court therefore should have entered judgment in favor of the defendants; and the case will be remitted to the District Court with instructions to enter such judgment. Costs to the defendants in this court.