BLANCHE T. EYERS, APPELLANT, v. STATE OF NEW JERSEY, BOARD OF TRUSTEES PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.

Argued November 17, 1981—Decided August 5, 1982.

*Gail S. Boertzel* argued the cause for appellant (*Stephen S. Weinstein*, attorney).

*Sharon M. Joyce*, Deputy Attorney General, argued the cause for respondent (*James R. Zazzali*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel).

The judgment of the Court was delivered by

HANDLER, J.

Roger F. Eyers was the plumbing inspector for the Township of Parsippany-Troy Hills for 38 years, first on a part-time basis and, beginning about 1965, on a full-time basis. He was enrolled in the Public Employees' Retirement System (PERS) effective January 1, 1955. At the end of 1975, he applied for regular service retirement at the age of 69. His application was granted by PERS, and he began receiving about $442 per month beginning in February 1976.

Eyers was indicted in 1978 on one count of misconduct in office and three counts of taking money unlawfully. The indictment alleged that between April 1974 and June 1975 he had accepted money in return for concealing plumbing violations. In May 1978, a jury convicted him of all four counts. The trial court merged the misconduct count into the three counts for taking money unlawfully and sentenced Eyers to a one-year suspended jail term, two years' probation, and a $3,000 fine.

Even before his actual conviction, PERS notified Eyers that it was considering the suspension of his pension payments and that he had the right to a hearing on that issue. A hearing scheduled for October 1978 was postponed because Eyers was ill with cancer. He died on May 9, 1979, before the hearing ever took place.

Blanche T. Eyers, the petitioner in this case, is the 75-year-old widow of Roger Eyers. They had been married since 1950 and she still lives in the same five-room house that she and her husband had owned throughout their marriage. They had no children. She has not worked since her marriage and was, during its entirety, dependent on her husband. In January 1980, she was receiving Social Security benefits of about $432 per month. She was also receiving dividends from several bank investments, but the record does not indicate the amount of these dividends. Her husband's estate had not yet been settled, but she had received life insurance payments of $2,500. She owns her house free of any mortgage and also owns a 1970 automobile in good condition. She stated that she had managed to pay all her bills and was not experiencing financial problems. She is covered by Medicare and additional health insurance and was not under the care of a doctor for any illnesses. The most important need Mrs. Eyers expressed was for financial security against serious illness in her old age.

Under the Option 2 type of retirement plan selected by her husband, see *N.J.S.A.* 43:15A-50, Mrs. Eyers, as the designated beneficiary, would receive a one-time insurance benefit of about $2,362 and an annual survivorship benefit of about $5,300. At its meeting in June 1979, the Board of Trustees of PERS determined that no benefits were due Mrs. Eyers because of her husband's dishonorable service.

A hearing was held in January 1980 before an Administrative Law Judge. The judge concluded that although Roger Eyers' service had been dishonorable because of his conviction, his widow should not be deprived of the survivor benefits. The Board of Trustees of PERS rejected the ALJ's recommendation. It ruled that since Roger Eyers had not met the prerequisite of honorable service, his designated beneficiary, Blanche Eyers, had no survivorship rights.

On appeal, the Appellate Division affirmed, holding that the implicit requirement of honorable service continues for the

duration of public employment. Because of his conviction for job-related crimes committed while still a public employee, Roger Eyers would not have been entitled to a pension. Therefore, his designated beneficiary could not claim survivorship benefits from nonexistent rights of the public employee. We granted the widow's petition for certification. 87 *N.J.* 363 (1981).

We held in *Uricoli v. The Board of Trustees, Police and Firemen's Retirement Systems,* 91 *N.J.* 62 (1982), also decided today, that where an employee commits a wrongful act while in public service, even if related to his public employment, forfeiture of all pension benefits is not automatically mandated unless the governing statute so provides. Rather, a balancing approach is necessary to determine whether there should be a forfeiture. We further explained the appropriate guidelines and standards to be used in making the requisite determination. 91 *N.J.* at 77–78.

If we were required to address only the question of whether Eyers' pension benefits payable directly to him were subject to forfeiture for his misconduct, it is arguable that his conduct was dishonorable to a degree that justifies the loss of his pension. Applying the *Uricoli* balancing test, the mitigating factors are that Eyers had compiled almost 35 years of seemingly unblemished public service and that his misconduct occurred at the end of his career. He was fully retired on service grounds and was receiving full service retirement benefits. The misconduct consisted of a series of offenses which, if considered separately, were not substantial. Furthermore, although subsequently convicted of a crime, he died before he could obtain a hearing before the pension board to address his right to continue to receive pension benefits. Countervailing considerations are that he was convicted of several offenses that were directly related to the performance of his official duties. These are indicative of a pattern of corruption in office. Moreover, Eyers' offenses involved venality of motive, which is highly relevant as to the nature of the employee's guilt. *Uricoli,* 91 *N.J.* at 77–78; *Makwinski v. State,* 76 *N.J.* 87, 92 (1978).

■ This case, however, presents factors which extend our inquiry as to the reasonableness of pension forfeiture beyond the circumstances addressed in *Uricoli*. The forfeiture doctrine sought to be applied does not involve the pension benefits that are being claimed or received by the errant employee. Rather, what is at stake are pension survivor benefits payable to the designated beneficiary, who was also the dependent spouse of the retired public employee. Consistent with the adoption of a flexible approach to forfeiture, we refuse to adopt a strict rule that automatically mandates that the survivor's benefits are directly derivative from and dependent upon the pensioner's and are, therefore, no greater than his pension rights. In the factual context of this case, as in all such cases involving the question of when forfeiture of benefits is appropriate, the proper approach is to balance and weigh all relevant considerations, with none being determinative. We therefore hold that, in this situation, several additional salient factors must be brought into the balancing equation.

■ As we noted in *Uricoli*, the pension forfeiture policy is penal in nature and has as its objectives the same considerations underlying all such schemes: punishment of the individual and deterrence, both as to the offending individual and other employees. 91 *N.J.* at 70. In the posture of this case, where the employee has died subsequent to both his retirement and the initiation of proceedings to cancel his pension, the goal of individual punishment and deterrence is simply not present. Admittedly, the goal of general deterrence remains. This, however, must be weighed against other concerns. Since the beneficiary who would otherwise benefit from the pension benefits is a dependent widow, other public policy considerations, present throughout the pension scheme, are clearly implicated.

■ Several statutes provide survivor benefits specifically for the surviving spouse, children, or parents of a public employee. See *N.J.S.A.* 43:15A–49 (allowance to spouse or other depend-

ents of a public employee who suffers an accidental death during the actual performance of his duties); *N.J.S.A.* 43:16–4 (pension benefits to dependents of public employee who loses life while on duty); *N.J.S.A.* 43:16A–12.1 (widows' and dependents' pension; increased benefits); *N.J.S.A.* 43:16A–9, and 16A–10 (allowance to beneficiaries of pensioner who dies during the performance of his duties or while in service, whether accidental or not). The Legislature has thus made specific provisions for the financial protection of family members of public employees under certain circumstances. This evinces a strong legislative policy in favor of those most likely to be dependent upon a public employee. Other provisions demonstrate a particular solicitude to the needs of dependents of an employee. For example, while *N.J.S.A.* 43:1–2 expressly provides that pension payments to public employees convicted of crimes involving moral turpitude shall be suspended during the period of confinement, it also nevertheless permits payments to continue where necessary for the maintenance of the individual's spouse, minor children or parents. See also *N.J.S.A.* 43:16–3 (pension benefits payable to dependent surviving spouse of employee who did not lose his life while on duty).

Although, as the State argues, the survivor benefits in dispute here could have been available under *N.J.S.A.* 43:15A–50 to whomever Roger Eyers had designated formally as his beneficiary, regardless of that person's dependency upon the pensioner, the balancing test calls for an application of the relevant criteria to each case in light of the surrounding circumstances. Rarely will situations be identical. Here, we are presented with a designated beneficiary who is also a dependent widow of advanced years. It would be inequitable to disregard such a circumstance in the application of a remedy, forfeiture, which we believe must be flexible in order fully to effectuate the competing objectives that the Legislature seeks through its public pension program.

We acknowledge that the quality of dishonorable conduct of the deceased pensioner militates strongly toward forfeiture.

*Uricoli,* 91 *N.J.* at 77–78. We are satisfied in this case, however, that this misconduct does not overcome the absence of a present need for individual punishment and deterrence. Nor does it, in our estimation, compel forfeiture in order to serve the need for general deterrence. The strong public policy in favor of providing for the dependents of public employees, who have been designated as beneficiaries, is fully applicable in this case. The total forfeiture of these pension benefits would be harsh and inequitable as to an innocent person and would not materially advance the purposes otherwise to be achieved by its application in other settings. Where total forfeiture is not required, however, pension benefits acquired subsequent to the acts of misconduct in office would not ordinarily be allowed. *Uricoli,* 91 *N.J.* at 79.

Accordingly, we reverse the judgment of the court below, and remand this matter to the pension board in order that it may recalculate the pension benefits due to Mrs. Eyers. Those benefits are to be adjusted to reflect the fact that Eyers was not entitled to receive pension benefits subsequent to the year during which he committed his misconduct in office.

PASHMAN, J., concurring.

I concur in the opinion of the Court for the reasons expressed in my concurrence in *Uricoli v. P. F. R. S.,* 91 *N.J.* 62 (1982).

SCHREIBER, J., concurring.

Roger F. Eyers had received a pension based on approximately 38 years of service which ended about January, 1976. His misconduct occurred in 1974. If Eyers had retired immediately prior to that date he would have been entitled to a pension. He had the necessary creditable service and age at that time. I would hold that his pension had vested as of that date. *See Makwinski v. State,* 76 *N.J.* 87, 94–98 (1978) (Conford, P. J. A. D., concurring). Since Mrs. Eyers' rights to survivorship bene-

fits were derivative, she is entitled to the benefits provided in *N.J.S.A.* 43:15A–50, as modified by the reduced benefits to which Roger F. Eyers was entitled. His creditable service ended in 1974 rather than in January, 1976. Accordingly, I would reverse and remand for recalculation of the benefits to be paid to the petitioner.

O'HERN, J., dissenting.

My reasons for dissenting in *Uricoli v. Bd. of Trustees, Police and Firemen's Retirement System,* 91 *N.J.* 62 (1982), decided today, are equally applicable here. Misconduct in office involving dishonorable service should result in a forfeiture of vested pension rights. There are two factual differences here. The misconduct was not discovered until the employee was already receiving retirement benefits, and he died during the pendency of proceedings to terminate the benefits.

As to the former, it is settled that the grant of a pension is neither final nor conclusive and is subject to reconsideration by the granting authority in an appropriate case. *Ruvoldt v. Nolan,* 63 *N.J.* 171, 183 (1973); *Mount v. Trustees of Pub. Emp. Retirement System,* 133 *N.J.Super.* 72 (App.Div.1975).

As to the latter, although my natural sympathies would welcome a widow's benefit, there is no logical way to sustain the result. In my view, decedent would have forfeited his pension rights had he lived. The fact that he died before the hearing does not alter that result.

Appellant's claim of survivorship benefits is based upon her husband's selection of "Option 2" of retirement benefits under *N.J.S.A.* 43:15A–50, which provides:

[A]t the time of his retirement a member ... may ... elect to receive the actuarial equivalent of his retirement allowance, in a lesser retirement allowance, payable throughout life, with the provision that:

. . . .

Option 2. Upon his death, *his retirement allowance shall be continued* throughout the life of and paid to such person as he shall nominate by written designation duly acknowledged and filed with the retirement system at the time of his retirement. [Emphasis added].

The language of this provision is clear. A decedent's benefits are to be continued as before with the payment going instead to a different beneficiary. This assumes that the retirant was entitled to receive the pension benefits. Failing that, there are no payments to be continued.

A dependent beneficiary has no greater right to a pension than the member who designated the beneficiary. It has been said in *Plunkett v. Pension Comm'rs of Hoboken*, 113 *N.J.L.* 230, 233–34 (Sup.Ct.1934), aff'd o. b., 114 *N.J.L.* 273 (E. & A. 1935):

> [D]eductions from the salaries of governmental employes, by the authority of the government for the support of a pension fund, create no contractual or vested right between such employes and the government and neither the employes, *nor those claiming under them,* have any rights except such as are conferred by the statute governing the fund. [Emphasis added].

The Court's reliance on *N.J.S.A.* 43:1–2 is misplaced. That statute requires that payments to pensioners convicted of crimes involving moral turpitude be suspended during the period of confinement. Notwithstanding this suspension requirement, the statute permits payments to continue where necessary for the maintenance of the imprisoned pensioner's wife, children or parents. Thus, the central purpose of the statute, prevention of double payments to incarcerated pensioners already being maintained at public expense, is tempered by a concern for the pensioner's dependents.

*N.J.S.A.* 43:1–2 offers no useful analogy to this case. That statute assumes an offense committed after the termination of honorable service and mandates temporary suspension of benefits during confinement. *Salley v. Firemen's & Policemen's, &c., Commission*, 124 *N.J.L.* 79 (Sup.Ct.1940). Here, by contrast, decedent was found guilty of official misconduct which rendered his service dishonorable.

The Court concludes that the Legislature's demonstrated concern for the welfare of those dependent on public employees indicates a legislative intent that survivorship benefits be continued in cases such as appellant's. In support of this position appellant cited two cases in which widows were awarded pension

benefits despite suspicious circumstances surrounding the death of their respective husbands. In *Bederski v. Policemen's and Firemen's Pension Board of City of Newark,* 4 *N.J.Misc.* 637 (Sup.Ct.1926), aff'd, 104 *N.J.L.* 163 (E. & A. 1927), it was alleged that an off-duty policeman had been killed while engaging in unlawful activity. *Angersbach v. South River Police Pension Commission,* 122 *N.J.L.* 1 (E. & A. 1939) involved a suspected suicide. In neither case was there anything more than a suspicion of criminal acts. No criminal conduct was ever proved or charged. Those cases are not persuasive in a situation such as this in which the decedent was convicted of a crime. *Ballurio v. Castellini,* 29 *N.J.Super.* 383, 392 (App.Div.1954).

The Court further cites *N.J.S.A.* 43:15A–49 as support for appellant's claim. That section provides that the spouse or other dependents of a public employee killed in public service receive a pension of 50% of salary and a lump sum benefit of one and one-half times salary. Appellant's husband did not meet an accidental death in pursuit of his duties as plumbing inspector. The special legislative concern for the dependents of employees who have lost their lives in the line of duty therefore does not apply.

Nor does *N.J.S.A.* 43:15A–50, which, in allowing selection of options on retirements, includes widows "in the group of people to be benefited," demonstrate a special legislative concern for widows as such. Obviously, if a retirant designates his wife as his beneficiary, at his death she, now his widow, will benefit. Any entitlement, however, comes from her status as designated beneficiary, not widow. It presupposes that the retirant himself was entitled to receive the pension benefits. Here, since decedent's dishonorable conduct divested him of his right to a public pension, I fail to understand how he could leave any survivorship benefits based thereon.

While this result might create a hardship for an innocent beneficiary who was an undoubted life partner of the public employee, it would be an equal hardship to another widow

similarly situated if her husband had lived to see his benefits forfeited before his death. She would then be without support while appellant would be receiving a regular pension benefit, a demonstrably unconscionable result. Under our pension laws both benefits and loss of benefits should be dispensed with an even hand. The employee's conduct is the deciding factor. It must be treated equally for all. I would affirm the decision below.

Chief Justice WILENTZ and Justice CLIFFORD join in this opinion.

PASHMAN and SCHREIBER, JJ., concurring in the result.

*For reversal and remandment*—Justices PASHMAN, SCHREIBER, HANDLER and POLLOCK—4.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD and O'HERN—3.