251 N.J. Super. 223 (1991)
597 A.2d 1084
LESTER M. AYARS, APPELLANT,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 1991.
Decided October 3, 1991.
*224 Lester M. Ayars, appellant, pro se.
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (Mary C. Jacobson, Deputy Attorney General, of counsel; Rene Y. Blocker, Deputy Attorney General, on the brief).
Before Judges MICHELS, HAVEY and CONLEY.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Appellant Lester M. Ayars (Ayars) appeals from a final administrative action of the Merit System Board of the State of New Jersey, Department of Personnel (Board) that upheld the action of the appointing authority, respondent New Jersey Department of Corrections (Department), removing him from his position as a Senior Correction Officer at the Bayside State Prison pursuant to the provisions of N.J.S.A. 2C:51-2. At issue is the constitutionality of the forfeiture provisions of N.J.S.A. 2C:51-2.
Ayars was convicted of (1) two counts of failure to file a Gross Income Tax Return with intent to evade the tax, a fourth degree crime, in violation of N.J.S.A. 54A:9-15(a) and (2) failure to file a Gross Income Tax Return with intent to defraud the State or to evade or avoid the tax, a third degree crime, in *225 violation of N.J.S.A. 54:52-8. As a result of his convictions, Ayars was served with a Preliminary Notice of Disciplinary Action suspending him from his position on the administrative charges of (1) conviction of a crime in violation of N.J.A.C. 4A:2-2.3(5), (2) conduct unbecoming a public employee in violation of N.J.A.C. 4A:2-2.3(6), and (3) forfeiture of public office for conviction of a third degree crime or higher in violation of N.J.S.A. 2C:51-2 and Department of Corrections Personnel Bulletin 84-17C Personal Conduct # 18. After a departmental hearing, the charges were upheld and the penalty of removal was recommended. Thereafter, Ayars was served with a Final Notice of Disciplinary Action, removing him from his employment. Ayars appealed to the Board pursuant to N.J.A.C. 4A:2-1.1. The Board referred the matter to the Office of Administrative Law for a de novo hearing before an Administrative Law Judge. Prior to the hearing date, the Department moved for a summary decision on the ground that Ayars forfeited his public employment pursuant to the forfeiture provisions of N.J.S.A. 2C:51-2. This statute, in pertinent part, provides:
a. A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if:
(1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;
* * * * * * * *
b. The forfeiture set forth in subsection a. shall take effect:
(1) Upon finding of guilt by the trier of fact or a plea of guilty, if the court so orders; or
(2) Upon sentencing unless the court for good cause shown, orders a stay of such forfeiture. If the conviction be reversed, he shall be restored, if feasible, to his office, position or employment with all the rights, emoluments and salary thereof from the date of forfeiture.
c. In addition to the punishment prescribed for the offense, and the forfeiture set forth in 2C:51-2a., any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions.
*226 The Administrative Law Judge held that since Ayars was convicted of third degree crimes, N.J.S.A. 2C:51-2 applied, and since the sentencing court did not stay the forfeiture, Ayars forfeited his position as a Senior Correction Officer. The Board agreed and affirmed the removal of Ayars. Ayars appealed, contending that subjecting him to a second prosecution and additional punishment for the same offense after conviction violated the Double Jeopardy Clause and the prohibition against bills of attainder. We disagree and affirm the action of the Board.
The Double Jeopardy Clause of the Constitution reads: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. The United States Supreme Court has held many times that "the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1900, 104 L.Ed.2d 487, 496 (1989). In Halper, the Supreme Court determined, "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." Halper, 490 U.S. at 446, 109 S.Ct. at 1901, 104 L.Ed.2d at 500-01. The Supreme Court explained that:
[The Double Jeopardy Clause's proscription of multiple punishments] is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.
In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. Ibid. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.... To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes *227 punishment when the sanction as applied in the individual case serves the goals of punishment.
These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence.... Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive government objectives." Bell v. Wolfish, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand that term.... We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. See e.g., Rex Trailer, [Co. v. U.S.], 350 U.S. [148], at 153, 76 S.Ct. 219 [222], 100 L.Ed. 149. Similarly, it would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment. In other words, as we have observed above, the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision. Similarly, we have recognized that in the ordinary case fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole.
We cast no shadow on these time-honored judgments. What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.... While the trial court's judgment in these matters often may amount to no more than an approximation, even an approximation will go far towards ensuring both that the Government is fully compensated for the costs of corruption and that, as required by the Double Jeopardy Clause, the defendant is protected from a sanction so disproportionate to the damages caused that it constitutes a second punishment.

*228 We do not consider our ruling far reaching or disruptive of the Government's need to combat fraud. Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed is punitive. In such a case, the Double Jeopardy Clause simply is not implicated. Nor does the decision prevent the Government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. See e.g., Missouri v. Hunter, 459 U.S. 359, 368-369, 103 S.Ct. 673 [678-679], 74 L.Ed.2d 535 (1983) ("Where ... a legislature specifically authorizes cumulative punishment under two statutes ... the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial"). Finally, nothing in today's opinion precludes a private party from filing a civil suit seeking damages for conduct that previously was the subject of criminal prosecution and punishment. The protections of the Double Jeopardy Clause are not triggered by litigation between private parties. In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole. [490 U.S. at 447-451, 109 S.Ct. at 1901-1903, 104 L.Ed.2d at 501-04 (footnotes and citations omitted)].
Therefore, the test in determining whether a civil penalty violates the Double Jeopardy Clause is whether the sanction as applied is meant to punish the individual. "Forfeiture [N.J.S.A. 2C:51-2a(1)] is not a sentencing disposition, but a civil penalty which is a collateral consequence of conviction." Old Bridge Public Wkrs. v. Old Bridge Tp., 231 N.J. Super. 205, 209, 555 A.2d 639 (App.Div. 1989) (citing State v. Heitzman, 107 N.J. 603, 604, 527 A.2d 439 (1987)). Forfeiture is a civil remedy, Old Bridge Public Wkrs. v. Old Bridge Tp., 231 N.J. Super. at 210, 555 A.2d 639, and its intent is "to provide complete and adequate safeguards to the public against those who breach its trust ... Public interest demands that public affairs be administered by officers upon whom rest no stigma of conviction of an offense involving dishonesty, crimes of the third degree on an offense touching upon his public office, position or employment." State v. Musto, 187 N.J. Super. 264, 305, 454 A.2d 449 (Law Div. 1982), aff'd, 188 N.J. Super. 106, 456 A.2d 114 (App. Div. 1983).
*229 Here, the forfeiture statute as applied to Ayars does not violate the Double Jeopardy Clause. Ayars' forfeiture of his public employment is not to punish him for his failure to file a Gross Income Tax Return with intent to evade or avoid the tax in violation of N.J.S.A. 54:52-8, although it may carry the "sting" of a penalty. Instead, the forfeiture is to remove Ayars from a position of trust as a Senior Correction Officer since he breached that trust through his conviction of the crime of failing to file a Gross Income Tax Return with intent to evade the tax. It is repugnant to common sense, justice and propriety to have a convicted criminal guarding, supervising and monitoring other criminals.
Furthermore, the forfeiture of Ayars' employment is not a bill of attainder.
A bill of attainder is a legislative act which levies punishment against specified individuals or groups without judicial trial. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1714-15, 14 L.Ed.2d 484, 492 (1965); United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252, 1259 (1946); In re Disciplinary Proceedings Against C. Schmidt & Sons, Inc., 79 N.J. 344, 356-57 [399 A.2d 637] (1979).
The substitution of a legislative determination of guilt for a judicial one is the distinguishing feature of a bill of attainder. In re Disciplinary Proceedings against Schmidt, 79 N.J. at 356 [399 A.2d 637], citing DeVeau v. Braisted, 363 U.S. [144] at 160, 80 S.Ct. [1146] at 1155, 4 L.Ed.2d [1109] at 1120 [1960]. [In re Coruzzi, 95 N.J. 557, 579-80, 472 A.2d 546, appeal dismissed, Coruzzi v. New Jersey, 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984)].
Here, N.J.S.A. 2C:51-2a and b require a conviction in the ordinary course of criminal proceedings before its terms are triggered. Indeed, forfeiture does not take effect until a finding of guilt by the trier of the fact or by a plea of guilty if the court orders forfeiture at that time or upon sentencing. As stated in N.J.S.A. 2C:51-2b:
The forfeiture set forth in subsection a. shall take effect:
(1) Upon finding of guilt by the trier of fact or a plea of guilty, if the court so orders; or
(2) Upon sentencing unless the court for good cause shown, orders a stay of such forfeiture. If the conviction be reversed, he shall be restored, if feasible, to his office, position or employment with all the rights, emoluments and salary thereof from the date of forfeiture.
*230 Finally, we point out that the statute is a law of general applicability with a valid regulatory purpose of protecting the public interest when public employees have been convicted of certain crimes.
In sum, the forfeiture of Ayars' position is simply a collateral consequence of his criminal conviction. Therefore, the Board's action in affirming his removal as a Senior Correction Officer at Bayside State Prison is not arbitrary, capricious or unreasonable, is fully supported by the evidence in the record and does not violate the statutory or legislative policies sought to be implemented and administered by the Board. See Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963); Dore v. Bedminister Township Bd. of Educ., 185 N.J. Super. 447, 453, 449 A.2d 547 (App.Div. 1982); see also R. 2:11-3(e)(1)(D).
Accordingly, the final administrative determination of the Board is affirmed substantially for the reasons expressed in the initial decision of Administrative Law Judge Dower-Labastille, dated August 31, 1990, whose findings of fact and conclusions of law were adopted by the Board on October 19, 1990.