631 A.2d 545

CHARLES LEPRINCE, PETITIONER–APPELLANT, v. BOARD
OF TRUSTEES, TEACHERS' PENSION AND ANNUITY
FUND, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 4, 1993—Decided March 19, 1993.

Before Judges PETRELLA, D'ANNUNZIO and KEEFE.

*Herbert I. Waldman* argued the cause for appellant.

*David P. Levine,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Charles LePrince appeals from a final determination by the Board of Trustees, Teachers' Pension and Annuity Fund (hereinafter Board) effecting a partial forfeiture of his pension.

Appellant retired on January 1, 1986 with twenty-two years and nine months of service as a school psychologist employed by a

board of education. His monthly pension was $1,465.08. LePrince was indicted on February 23, 1988. The indictment charged him with one count of aggravated criminal sexual contact, one count of criminal sexual contact, three counts of misconduct in office, and two counts of sexual assault. The acts charged involved three male victims.

Pursuant to a plea agreement LePrince pleaded guilty on December 20, 1989 to the first count which charged that between January 1, 1982 and June 30, 1982 he committed an act of sexual contact with B.C.[1] when B.C. "was at least 13 but less than 16 years old and Charles Edward LePrince had supervisory power over [B.C.]" in violation of *N.J.S.A.* 2C:14–3a and *N.J.S.A.* 2C:14–2a(2)(b). Defendant was sentenced on March 2, 1990, to three years of probation. The other six counts were dismissed.

It was undisputed that LePrince first met B.C. in his capacity as a school psychologist when he performed an evaluation of B.C. and prepared an evaluation report.

In August 1990, the Board notified appellant that due to the offense, it had determined that his service after December 31, 1981 was "not creditable for retirement calculation purposes inasmuch as it was rendered after the date of the offense." The Board recalculated LePrince's monthly pension allowance and reduced it from $1,465.08 to $655.02. It also determined that, because of the reduction in the monthly allowance, LePrince had been overpaid for the period January 1, 1986 to September 1, 1990 in the amount of $46,287.96. The Board demanded repayment of this amount.

LePrince appealed and the matter was heard by an Administrative Law Judge whose initial decision "affirmed" the Board's action. In its Final Administrative Determination dated January 10, 1992, the Board adopted the ALJ's findings and conclusions.

LePrince now appeals and makes the following contentions:

---

[1] We are using fictitious initials.

I. FULL PENSION BENEFITS SHOULD BE RESTORED UNDER *URICOLI*

 A. THE *URICOLI* FACTORS WERE NOT PROPERLY ANALYZED

 B. THE *URICOLI* FACTORS WERE NOT PROPERLY WEIGHED

II. A REDUCTION IN BENEFITS CONSTITUTES A SECOND PUNISHMENT WHICH IS BARRED BY DOUBLE JEOPARDY PRINCIPLES

III. PENSION FORFEITURE IS INAPPROPRIATE WHEN THE UNDERLYING CONDUCT WAS THE PRODUCT OF A COMPULSIVE SEXUAL DISORDER

IV. THERE SHOULD BE NO PENSION REDUCTION BECAUSE THE CONDUCT WAS NOT SUFFICIENTLY RELATED TO APPELLANT'S EMPLOYMENT

V. ASSUMING ARGUENDO THAT THERE SHOULD BE A PARTIAL FORFEITURE, THE EFFECTIVE DATE WAS IMPROPERLY FOUND.

 We have carefully reviewed the record and, in light of applicable law, we conclude that contentions I, III, IV and V are without merit. *R.* 2:11–3(e)(1)(D) and (E). The Board considered and evaluated the standards and factors announced in *Uricoli v. Police & Fire. Retirem. Sys.,* 91 *N.J.* 62, 449 *A.*2d 1267 (1982). The Board's application of the *Uricoli* factors "was neither arbitrary and capricious nor unsupported by substantial credible evidence in the record." *Corvelli v. Trustees, Police & Firemen's Retirement Sys.,* 130 *N.J.* 539, 541, 617 *A.*2d 1189 (1992). In particular, the evidence supports the finding that appellant became acquainted with B.C. and his vulnerability through appellant's employment as school psychologist. Thus, appellant exploited his position of trust and confidence. The fact that appellant's behavior was "compulsive" under *N.J.S.A.* 2C:47–3, as determined by the Adult Diagnostic and Treatment Center, does not convert dishonorable service into honorable service, though it may be considered as a mitigating factor. *Cf. T.J.M. v. Police & Fire. Retirement Sys.,* 218 *N.J.Super.* 274, 281, 527 *A.*2d 883 (App.Div. 1987).

 We also reject appellant's contention that the partial forfeiture of his pension allowance violated constitutional guarantees against double jeopardy. *U.S. Const.* amend V; *N.J. Const.,* art I,

para. 11.[2] Those guarantees protect, in part, against multiple punishment for the same offense. *Ayars v. New Jersey Dept. of Corr.*, 251 *N.J.Super.* 223, 226, 597 *A.*2d 1084 (App.Div.1991). In *Helvering v. Mitchell,* 303 *U.S.* 391, 58 *S.Ct.* 630, 82 *L.Ed.* 917 (1938), appellant contended that the imposition of a penalty equal to fifty percent of a tax deficiency, allegedly caused by appellant's fraud, was barred under the doctrine of double jeopardy where appellant had been acquitted of the fraud charge in a criminal trial. The Court explained that "[u]nless this sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause . . . is not applicable." *Id.* at 398–99, 58 *S.Ct.* at 633, 82 *L.Ed.* at 921. The Court recognized that the legislature may impose civil and criminal sanctions for the same act "for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Id.* at 399, 58 *S.Ct.* at 633, 82 *L.Ed.* at 922. The Court held that the fifty per cent penalty was a remedial civil sanction "as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Id.* at 401, 58 *S.Ct.* at 634, 82 *L.Ed.* at 923.

Appellant relies on *United States v. Halper,* 490 *U.S.* 435, 109 *S.Ct.* 1892, 104 *L.Ed.*2d 487 (1989), in which the Court held that when a statute imposing a fixed penalty subjects an offender to a sanction overwhelmingly disproportionate to the damage he has caused, the double jeopardy protection is violated. In that case defendant had been convicted of sixty-five counts of medicare fraud totaling $585. The civil penalty statute, however, imposed a sanction of $2,000 per count for a total of $130,000. Because the total penalty was not related rationally to the goal of compensat-

---

[2] Appellant does not contend that the New Jersey Constitution provides more protection than the United States Constitution. *See State v. DeLuca,* 108 *N.J.* 98, 101–02, 527 *A.*2d 1355, *cert. denied,* 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987) (New Jersey's double jeopardy protection is co-extensive with federal constitution).

ing the government for its loss, it qualified as punishment. *Id.* at 449, 109 *S.Ct.* at 1902, 104 *L.Ed.*2d at 502. The Court remanded to the trial court for a determination of an appropriate civil penalty based on an accounting of the government's damages and costs.[3]

*Halper* is distinguishable from the present case. The proceeding before the Board was intended to and did fashion a proportionate remedy for appellant's dishonorable service. Thus, *Halper*'s principle, that a disproportionate civil remedy will constitute punishment, is not applicable. *Cf. State v. Ciba–Geigy Corp.,* 253 *N.J.Super.* 51, 60, 600 *A.*2d 1230 (App.Div.1992) (to determine whether civil penalty of $1.45 million was punitive or remedial, case must be remanded for comparison of the amount with government's costs and damages).

Appellant, however, relies on the double jeopardy definition in *Halper,* in which the Court stated that "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 *U.S.* at 448–49, 109 *S.Ct.* at 1901–02, 104 *L.Ed.*2d at 502. The *Halper* Court embellished its theme with this observation:

> In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. *Ibid.* The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads.... Simply put, a civil as well as a criminal sanction constitutes

---

[3] Our Supreme Court anticipated *Halper* when it decided *In re Garay,* 89 *N.J.* 104, 444 *A.*2d 1107 (1982) involving the imposition of a $116,000 civil penalty for medicaid fraud totaling $1,290.20. Although the Court ruled that double jeopardy guarantees were not applicable, it remanded for determination of a reasonable penalty commensurate with the State's costs. The remand was prompted by due process considerations.

punishment when the sanction as applied in the individual case serves the goals of punishment.

[490 *U.S.* at 447–448, 109 *S.Ct.* at 1901, 104 *L.Ed.*2d at 501 (footnote and citations omitted) ].

Appellant points to language in *Eyers v. Public Employees' Retirem. Sys.*, 91 *N.J.* 51, 449 *A.*2d 1261 (1982), decided the same day as *Uricoli*, characterizing the forfeiture of pension rights as punishment:

As we noted in *Uricoli*, the pension forfeiture policy is penal in nature and has as its objectives the same considerations underlying all such schemes: punishment of the individual and deterrence, both as to the offending individual and other employees.

[*Eyers, supra*, 91 *N.J.* at 56, 449 *A.*2d 1261.]

See also *Corvelli v. Trustees, Police & Fire. Retirem. Sys., supra*, 130 *N.J.* at 551, 617 *A.*2d 1189 ("pension forfeiture is an acceptable form of punishment under our laws"). Accordingly, appellant contends that since forfeiture is punishment, multiple punishment has been imposed for the same criminal act in violation of double jeopardy protection.

We disagree. Full or partial forfeiture of pension rights is based on the employee's violation of the implied condition that the employee render honorable service. *Uricoli, supra*, 91 *N.J.* at 66, 449 *A.*2d 1267. Thus, in *Masse v. Public Employees' Retirem. Sys.*, 87 *N.J.* 252, 432 *A.*2d 1339 (1981) and *Procaccino v. Public Employees' Retirement System*, 87 *N.J.* 265, 432 *A.*2d 1346 (1981), the Court prevented total forfeiture because in each case the employee's crime was unrelated to his employment. *Cf. T.J.M. v. Police & Fire. Retire. Sys., supra*, 218 *N.J.Super.* at 279, 527 *A.*2d 883, holding that "only in the most compelling of circumstances should the *Uricoli* test compel a civil servant to forfeit his pension rights when he is convicted of a crime involving moral turpitude which is unrelated to his public employment." Forfeiture is imposed because of the employee's breach of the condition of honorable service and, therefore, forfeiture is a concomitant of the administration of a public pension system, consistent with a pension's status as deferred compensation for services rendered.

*Uricoli, supra,* 91 *N.J.* at 72, 449 *A.*2d 1267. The "punishment" referred to in *Eyers, Uricoli* and, most recently, in *Corvelli,* is not punishment in the criminal sense, but rather is a collateral consequence of the employee's breach of the condition of honorable service. The "punishment" is analogous to a judgment for damages arising out of a breach of contract. *See also Ayars v. New Jersey Dept. of Corr., supra,* 251 *N.J.Super.* at 229, 597 *A.*2d 1084 (forfeiture of employment upon conviction of a crime does not violate prohibition against double jeopardy); *State v. Darby,* 246 *N.J.Super.* 432, 445–46, 587 *A.*2d 1309 (App.Div.) (civil penalties were not disproportionate to the State's costs and, therefore, prohibition against double jeopardy not violated), *certif. denied,* 126 *N.J.* 342, 598 *A.*2d 898 (1991). We conclude, therefore, that the partial forfeiture of LePrince's pension did not violate the guarantee against double jeopardy.

We remand, however, for reconsideration of the Board's decision regarding recovery of the overpayment. As previously indicated, the Board determined that as a result of the recalculated pension allowance, LePrince had received $46,287.96 in excess payments. The Board determined that it would recoup the overpayment through assignment by LePrince to the Teachers' Pension and Annuity Fund of a death benefit in the amount of $11,720.68 and LePrince's pension contributions in the amount of $5,731.22 made after December 31, 1981 to the date of his retirement. LePrince agreed to make those assignments.

The Board also reduced LePrince's already reduced allowance by an additional $270 per month to recover the balance of the overpayment. Consequently, LePrince is receiving approximately $385 per month instead of the original monthly allowance of $1,465.08.

We now remand to the Board for reconsideration of the additional $270 reduction in LePrince's monthly allowance to recover the balance of the overpayment. We remand only because the record does not indicate that the issue received adequate consideration under the *Uricoli* test in light of some evidence that the

reduction of LePrince's monthly allowance to $385 is causing severe financial hardship. *Cf. Corvelli, supra,* 130 *N.J.* at 549, 617 *A.*2d 1189 "circumstances of employee's beneficiaries, their age, their means, and their reliance and dependency on continued receipt of payments [are] relevant factors to be weighed in the forfeiture decision"); *Eyers, supra,* 91 *N.J.* at 56–58, 449 *A.*2d 1261 (in light of flexible nature of forfeiture remedy, deceased employee's widow is entitled to pension benefits based on husband's service up to year during which he committed job-related offenses).

The Board's determination that appellant's service after December 31, 1981 was not creditable for retirement calculation purposes is affirmed. The matter is remanded for reconsideration by the Board of its decision to recoup an overpayment by further reducing LePrince's monthly allowance. We do not retain jurisdiction.