VIRGINIA CONSTRUCTION CORPORATION, A CORPORA-
TION OF THE STATE OF DELAWARE, PLAINTIFF-AP-
PELLANT AND CROSS-RESPONDENT, v. R. KENNETH
FAIRMAN, *ET AL.*, MEMBERS CONSTITUTING THE
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF
PRINCETON; LEONARD C. JOHNSON, *ET AL.*, MEM-
BERS OF THE BOARD OF ADJUSTMENT OF THE TOWN-
SHIP OF PRINCETON; and W. JOSEPH SHINN, ZONING
OFFICER AND BUILDING INSPECTOR OF THE TOWN-
SHIP OF PRINCETON, DEFENDANTS-RESPONDENTS,
AND GEORGE R. COOK, 3RD, *ET AL.*, INTERVENING
DEFENDANTS AND CROSS-APPELLANTS.

Argued November 5, 1962—Decided December 17, 1962.

*Mr. Joseph A. Weisman* argued the cause for the plaintiff-appellant and cross-respondent (*Messrs. Hannoch, Weisman, Myers, Stern & Besser,* attorneys; *Mr. Geoffrey Gaulkin* and *Mr. Gary N. Skoloff,* on the brief).

*Mr. Gordon D. Griffin* argued the cause for the defendant-respondent Township Committee.

*Mr. Hervey S. Moore, Jr.* argued the cause for the defendant-respondent Zoning Board of Adjustment.

*Mr. Harry Heher* argued the cause for the intervening defendants and cross-appellants (*Messrs. Minton, Dinsmore & Bohlinger,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Law Division entered judgment dismissing the plaintiff's complaint and the intervening defendants' counterclaim and cross-claim. Thereafter the plaintiff appealed and the intervening defendants cross-appealed to the Appellate Division. We certified before argument in the Appellate Division.

In November 1953 the owners of a 90-acre tract located on the northwest side of the Princeton Pike in Princeton Township submitted a preliminary plat plan to the Township's Planning Board. Their plan contemplated the residential development of the tract on 75 one-acre lots. The Planning Board recommended approval of the plan and on December 14, 1953 the Township Committee gave tentative approval. Rules of the Planning Board, adopted pursuant to authority granted by ordinance, contained no provision for hearing prior to tentative approval but expressly required public hearing on notice to interested parties before final approval. See R. S. 40:55–12. The rules set forth that the final plat shall be submitted to the Planning Board within one year after approval of the preliminary plat, otherwise the preliminary plat shall become null and void unless an extension of time is applied for and granted by the Board.

On January 1, 1954 the Municipal Planning Act of 1953 took effect. L. 1953, c. 433; N. J. S. A. 40:55–1.1 et seq. On June 14, 1954 the Township Committee adopted ordinances which reconstituted the Planning Board as a strong board (see Cunningham, "Control of Land Use in New Jersey," 15 Rutgers L. Rev. 1, 21 (1960)) and prescribed rules and regulations for land subdivision. Pursuant to the Municipal Planning Act, public hearing on notice to interested parties was required before tentative approval which confers certain rights for 3 years as set forth in the act. See N. J. S. A. 40:55–1.18; N. J. S. A. 40:55–1.7; Levin v. Livingston Tp., 35 N. J. 500 (1961); Hilton Acres v. Klein, 35 N. J. 570 (1961). On January 3, 1955, which was 20 days beyond the year specified in the superseded planning

board rules, the Planning Board granted an extension of time to November 23, 1956 for filing the final plat. On December 6, 1955 the Township Committee adopted a revised land subdivision ordinance and a revised zoning ordinance. The subdivision ordinance directed that lot sizes and dimensions conform with the zoning ordinance which placed a large part of the Township, including the 90-acre tract under consideration, in district R-1 which provided for a minimum lot size of 2 acres. The zoning ordinance contained a saving clause which authorized exemption from the 2-acre requirement, for all lots in subdivisions approved between May 1948 and December 1955.

In September 1956 the 90-acre tract was acquired by Bertram F. Bonner who is president and a substantial owner of the plaintiff corporation. Thereafter, Bonner submitted the final plat plan for development of the tract and requested Planning Board approval. The plat conformed generally with the preliminary plat and called for 74 lots each approximating 1 acre in size. On October 1, 1956 the final plat was approved by the Planning Board. No public notice was ever given and no public hearing was ever held in connection with the Board's final approval. *Cf. R. S.* 40:55–12; *N. J. S. A.* 40:55–1.18. A surety bond was filed, roads were staked out by March 1957, and boundary monuments were installed by November 1957. In January 1958 Bonner conveyed title in the tract to the plaintiff corporation. In June 1958 the plaintiff entered into a contract for the installation of a drainage system. The Township Engineer, when advised of the contract, notified the plaintiff that although its proposed use of 24-inch pipe had been approved at the time of the submission of the final plat, he considered that it was inadequate and would lead to future drainage problems. It is to be noted that the approval on the Township's behalf had been given by the Township Engineer's predecessor who, while employed part time by the Township as its Engineer, had accepted employment by the developer and had designed the developer's drainage plan. Although this type of dual em-

ployment has not been uncommon in the past, it gives rise to highly offensive conflicts of interest and should not be tolerated hereafter by municipalities. *Cf. Conflict of Interest and Federal Service* (1960); *Reilly v. Ozzard,* 33 *N. J.* 529, 553–554 (1960).

After discussion with officials of the Township, the plaintiff agreed to use 30-inch pipe and proceeded with its installation. Further problems arose in connection with the drainage system and in October 1958 the plaintiff engaged an independent engineering firm. In January 1959 a new drainage plan was approved by the Township Engineer. Work then proceeded and by June 1959 the drainage system, road grading and road paving were substantially completed. Prior thereto the plaintiff had sold 7 contiguous lots abutting Princeton Pike, a pre-existing public road. Five of the lots were sold to Alexander Corporation, an affiliate of the plaintiff, and two were sold to an individual. Building permits for the 7 lots were issued between July 8, 1958 and March 16, 1959 and homes were built thereon although because water pollution was experienced in some of the wells serving the lots, the local Board of Health insisted upon the installation of chlorination equipment where potable water could not otherwise be obtained.

Acting pursuant to a recommendation from the Planning Board, the Township Committee in May 1959 adopted an ordinance repealing the zoning ordinance saving clause which authorized exemption of the plaintiff's tract from the 2-acre requirement. The ordinance was introduced and passed on first reading on April 13, 1959, was duly advertised, was the subject of public hearing, and was finally adopted on May 19, 1959. Although the plaintiff was aware of the pendency of the repealer, it continued with its work on the development and by June 1959 had expended sums approximating $127,-000 for engineering fees, storm drainage system, road grading and paving, and incidentals. The Township asserts that only about 36% of the stated amount was actually incurred before the plaintiff knew of the pendency of the repealer. On

August 10, 1959 the plaintiff applied by a single letter to the Township zoning officer for 67 building permits. This represented the original 74 lots less the 7 on which houses had been built. The application was not accompanied by any certification from the local Board of Health with respect to water and sewage facilities (*cf. N. J. S. A.* 58:11–23 *et seq.*) or by any building plans and, in the Law Division, counsel for the plaintiff conceded that the application did not comply with the Township's building code. The Township's zoning officer denied the application on August 12, 1959. Thereafter, the plaintiff filed an appeal with the Zoning Board of Adjustment and sought a variance from the 2-acre and lot width requirements of the zoning ordinance. After a hearing, the Zoning Board denied the appeal and sustained the zoning officer's action. In its findings, it pointed out that resubdivision by the plaintiff of its tract so as to comply with the 2-acre and lot width requirements of the zoning ordinance was possible with only "relatively minor engineering services" and that no evidence "as to projected income and profit or loss" had been presented before it by the plaintiff to indicate that it would suffer any significant financial loss by pursuing development of its tract on 2-acre lots as required by the ordinance.

In due course, the plaintiff filed its complaint in the Law Division seeking (1) a declaration that the zoning amendment of May 19, 1959 which repealed the saving clause is inapplicable to the plaintiff's property, (2) an order setting aside the Board of Adjustment's denial of a variance, and (3) a judgment directing the zoning officer to issue the 67 permits applied for by the plaintiff. Answers were filed by the Township Committee, its zoning officer and its Board of Adjustment. In addition, an answer with counterclaim and cross-claim was filed by several residents of Princeton Township who were permitted to intervene as defendants. A pretrial order set forth the various contentions of the parties, including an assertion by the intervening defendants that the plaintiff would suffer no substantial loss by virtue of the imposi-

tion of the 2-acre requirement on the tract under development. At the trial Mr. Wheeler, an engineer licensed since 1957, testified on the plaintiff's behalf and submitted proposed maps for converting the development into 2-acre tracts. These would entail additional outlays in connection with the drainage system but Mr. Wheeler acknowledged in a deposition that the tract could be laid out on 2-acre lots so as to use fully the facilities already installed without additional outlays other than engineering costs. Mr. Lanning, an engineer licensed since 1929, testified on behalf of the defendants and submitted a proposed map which would convert the tract into 35 lots of at least 2 acres each and would enable the full use of all of the installed facilities. He expressed the view that the only additional outlay which would be entailed would be engineering costs "in the amount of about $1,000."

Mr. Bachman, a real estate broker who testified for the plaintiff, expressed the view that the plaintiff's tract was soundly laid out on 1-acre lots "from the standpoint of economic feasibility and the public acceptance." He considered that the ratio of land cost to total improvement cost was sound on a 1-acre basis and would be distorted on a 2-acre basis. Mr. Edmund D. Cook, a realtor who testified for the defendants, expressed the view that in the light of the nature of the area the "highest and best use" of the tract was for residential development on lots of not less than 2 acres. He considered that it was economically feasible to develop the property in accordance with the map submitted by Mr. Lanning. Indeed, he expressed the view that under the plaintiff's mode of operation it would take about 12 years for it to market the 67 lots of 1 acre each for the building of individual luxury homes, whereas the 35 lots of 2 acres each could be marketed for the building of individual luxury homes within 7 years with largely the same net return to the plaintiff. He supported this view by detailed calculations and references to his extensive experience in real estate sales and developments in the Princeton area and it may be noted that the plaintiff introduced no rebuttal testimony designed to meet Mr. Cook's presentation.

Mr. Catlin, a professional consultant who testified as a witness for the plaintiff, expressed the view that the 1-acre lot development of the plaintiff's tract would not adversely affect the potential development of the surrounding area in Princeton Township on 2-acre lots or the adjacent area in Lawrence Township on 1½-acre lots. He declined, however, to suggest that the 2-acre requirement was unreasonable but, on the contrary, said that he assumed it to be reasonable. *Cf. Fischer v. Township of Bedminster,* 11 *N. J.* 194 (1952). Mr. Smith, a professional planner who testified for the defendants, expressed the view that the plaintiff's tract was within an area which was particularly desirable for large lot development of 2 acres or more and that the intrusion of 1-acre lots would threaten the characteristics of the area and the soundness of the Township's zoning plan. He pointed out that the plaintiff's tract was not served by public sewer and water and that its development on 1-acre lots would result in increased population which might well alter the complexion of the area and necessitate the installation of public facilities earlier than contemplated by the zoning plan.

At the close of the trial, Judge Kingfield rendered an oral opinion and decision. He found that the application for building permits did not comply with the pertinent formal requirements of the Township and was properly denied (*cf. Saddle River Country Day School v. Saddle River,* 51 *N. J. Super.* 589, 605–606 (*App. Div.* 1958), affirmed 29 *N. J.* 468 (1959)); he declined to set aside the Board of Adjustment's denial of the plaintiff's application for variance on his finding that there was no showing whatever that the Board's action was arbitrary, unreasonable or capricious (*cf. Rexon v. Bd. of Adjustment, Haddonfield,* 10 *N. J.* 1, 7 (1952)); and he rejected the plaintiff's contention that the amendatory ordinance which repealed the saving clause was unreasonable as applied to the plaintiff's tract and impaired the plaintiff's vested right to develop it on 1-acre lots. In the course of his opinion, he referred to Mr. Smith's testimony that the development of the plaintiff's tract as originally laid out in 1-acre lots would impair the zoning plan of the municipality and

also to the testimony of Mr. Lanning that the tract could be converted to a 2-acre development without any significant additional outlay and the testimony of Mr. Cook that it was economically feasible to develop the property on 2-acre lots. He found that there was no clear showing of financial loss to the plaintiff and that the expenditures it actually made would have been made without regard to whether the tract was developed on a 1-acre or 2-acre basis; and after stressing the fact that there had never been a public hearing as required at some point under both the earlier and later planning acts (*R. S.* 40:55–12; *N. J. S. A.* 40:55–1.18), he concluded that the plaintiff had "not acquired a vested right to be immune from the 2-acre restriction" set forth in the zoning ordinance. *Cf. Gruber v. Township of Raritan*, 39 *N. J.* 1 (1962).

In support of its appeal, the plaintiff contends that it had a final valid approval under the Municipal Planning Act which protected it against the later upgrading of the lot size to 2 acres. Although the act provides that tentative approval shall furnish protection for 3 years it is silent as to how long final approval shall remain in effect; a recent legislative bill, which has been introduced but has not as yet been enacted, would direct that zoning requirements remain unchanged for a period of 2 years after the date of final approval, with leave to the governing body or planning board to extend the period of protection for 1 additional year. See *Assembly No.* 555 (40A:7–22); *Statement Supplementing the Fourth Legislative Report of the County and Municipal Law Revision Commission* 15 (1962); *cf. Levin v. Livingston Tp., supra,* 35 *N. J.,* at *p.* 519. In *Levin* it was suggested that by its silence the Legislature intended that the effectiveness of final approval should continue for only a reasonable time after the grant (35 *N. J.,* at *p.* 519) and the plaintiff here seems to agree with that approach. In the instant matter, over 2 years and 7 months elapsed between the date of final approval and the date upon which the upgrading of the lot size took effect, and it may well be that under the circumstances that constituted a sufficient period. However, we need not pursue the matter since we are satisfied that the final approval which the

plaintiff obtained was legally deficient and that any vested rights it claims here must rest upon principles of equitable estoppel (*Gruber v. Township of Raritan, supra*) rather than upon the Municipal Planning Act (*Levin v. Livingston Tp., supra*).

The Planning Act of 1930 (*R. S.* 40:55–1 *et seq.*) and the Municipal Planning Act of 1953 (*N. J. S. A.* 40:55–1.1 *et seq.*) embodied explicit provisions for hearing in connection with the approval of plats. Under the terms of the earlier act the hearing on notice to all interested parties was required before "action is taken" (*R. S.* 40:55–12) and under the terms of the later act the approval is to take place "after hearing" on notice to all interested parties. *N. J. S. A.* 40:55–1.18; *N. J. S. A.* 40:55–1.7. Under both acts the legislative solicitude for the public interest is entirely evident. Before an approval vesting statutory protection in the developer may be granted, the interested parties are entitled to an opportunity to be heard. Here the plaintiff obtained both its tentative approval and its final approval without hearing. While the plaintiff may explain that this was due to the transition from the earlier act to the later Planning Act, the undisputed fact remains that there was no hearing at any time. In the absence thereof the plaintiff is not entitled to assert the statutory protection; any contrary view would run counter to the legislative intent to be fairly gathered from the course of the successive legislative enactments.

The plaintiff contends that even if its final approval is considered legally deficient, it nonetheless expended substantial sums in good faith and in reliance upon municipal approval and is entitled to proceed with its development under principles of equitable estoppel recently restated by this court in *Gruber v. Township of Raritan, supra.* Unlike the case at hand, the municipality in *Gruber* sought abruptly to eliminate entirely a residential development which was already under way by amending its zoning ordinance so as to place the tract in a light industrial zone where no residences could be built. Here the zoning amendment will not prohibit the residential development but will permit it to proceed though

on a lesser scale; stressing that fact, it is the municipality's contention that unlike the situation in *Gruber,* "a weighing of all of the equities indicates a balance favoring the upholding of present zoning regulations as applied to plaintiff's land."

In *Tremarco Corporation v. Garzio,* 32 *N. J.* 448 (1960), the court referred to the difficulties involved in determining when a municipality may be equitably estopped from applying a later more restrictive zoning ordinance to a landowner who has initiated proceedings and has made expenditures in reliance on the terms of an earlier zoning ordinance. In the course of his opinion, Justice Schettino noted that the ultimate objective was fairness to both the public and the individual property owner, and that the court must justly determine in each case whether the extent of reliance was sufficient so as to prevail "over the normally paramount authority of the municipality to preserve the desirable characteristics of the community through zoning." 32 *N. J.,* at *p.* 456. In *Greenway Homes v. River Edge,* 137 *N. J. L.* 453 (*Sup. Ct.* 1948), the plaintiff built homes in sections 1 and 2 of his development pursuant to approval obtained from the planning board. Before the planning board approved the map for section 3, the governing body of the municipality upgraded its zoning ordinance so as to require 75-foot frontage rather than the 60-foot theretofore required. In holding that the upgrading was reasonable and was validly applied to the plaintiff's development, the court noted that the plaintiff could "readily change its plans so as to comply with the ordinance without hardship other than loss of some of its anticipated profits" and that this loss could "hardly be considered as a controlling factor." 137 *N. J. L.,* at *p.* 457.

In balancing the equities on a claim of estoppel (*Tremarco Corporation v. Garzio, supra,* 32 *N. J.,* at *p.* 457), courts elsewhere have readily recognized that the right to upgrade zoning requirements in the public interest may fairly be sustained against a development which will be subjected to no substantial loss by virtue of the upgrading. *Cf. Elsinore Property Owners Ass'n v. Morwand Homes,* 286 *App. Div.*

1105, 146 *N. Y. S. 2d* 78, 80 (1955); *Wehrmeister v. Carl-man,* 17 *Ill. App. 2d* 171, 149 *N. E. 2d* 453, 458 (1958). See *People v. Miller,* 304 *N. Y.* 105, 108, 106 *N. E. 2d* 34, 35 (1952); *Melin v. Community Consol. School Dist. No. 76,* 312 *Ill.* 376, 383–384, 144 *N. E.* 13, 16 (1924); 19 *Am. Jur., Estoppel* § 85, *p.* 735 (1939). In *Wehrmeister* the court, while applying an equitable estoppel upon a showing that significant harm would result from the imposition of a greater zoning restriction, reaffirmed the doctrine expressed in *Melin* that where there has been no "substantial loss" the doctrine of estoppel may not properly be invoked against the munici-pality. 149 *N. E. 2d,* at *p.* 458. *Cf. People v. Miller, supra,* where the court applied a later zoning provision even against a prior nonconforming use where the resulting loss to the landowner was insubstantial; as Judge Fuld put it, the owner was entitled to his prior use only if his interest in its continuance was "too substantial to justify its deprivation in the light of the objectives to be achieved by enforcement of the provision." 106 *N. E. 2d,* at *p.* 35.

 The burden of proving its claim of a vested right based on principles of equitable estoppel rested clearly on the plaintiff. *Cf. Lawes v. Lynch,* 7 *N. J. Super.* 584, 593 (*Ch. Div.* 1950), affirmed 6 *N. J.* 1, 11 (1950); 19 *Am. Jur., Estoppel* § 198, *p.* 852 (1939). The trial judge found that it had not carried its burden and we see no reason for dis-turbing his finding. He pointed out that there was no clear showing that the plaintiff would suffer any substantial finan-cial loss as the result of the upgrading and that the expendi-tures it made would have been made without regard to whether the tract was developed on a 1-acre or 2-acre basis. And he referred, *inter alia,* to Mr. Lanning's map which would convert the tract into 2-acre lots without any substan-tial outlay and to Mr. Cook's testimony (which the plaintiff did not undertake to meet at the trial) that under the plain-tiff's mode of operation it would take about 12 years for it to market the 67 lots of 1 acre each whereas the 35 lots of 2 acres each could be marketed within 7 years with largely the same net return to the plaintiff. It must be borne in mind

that we are dealing here with individual luxury homes which presumably would be constructed on order and over a long period. It would disturbingly conflict with the public interest to tie the Township to past ideas during that extended time in the future. See *Hilton Acres v. Klein, supra,* 35 *N. J.,* at *p.* 580; *cf.* Goldston and Scheuer, "Zoning of Planned Residential Developments," 73 *Harv. L. Rev.* 241 (1959); "New Approaches to Residential Land Development: A Study of Concepts and Innovations," *Urban Land Institute Technical Bulletin* 40 (1961); "Density Zoning: Organic Zoning for Planned Residential Developments," *Urban Land Institute Technical Bulletin* 42 (1961). Where, as here, the Township has currently upgraded its zoning requirements and has done so without any showing by the plaintiff of unreasonableness or substantial harm or loss to the development under way, its action should rightly be permitted to stand.

In the light of the views hereinbefore expressed, the Law Division's rejection of the plaintiff's request for a declaration that the zoning amendment of May 19, 1959 was invalid or inapplicable to its property, was entirely sound. At oral argument, the plaintiff acknowledged that if its request for a declaration fails, its applications for a variance and for building permits would also have to fail. In any event, the record contains nothing to justify judicial interference with the Board of Adjustment's denial of the variance and the zoning officers denial of the building permits. See *Saddle River Country Day School v. Saddle River, supra; Rexon v. Bd. of Adjustment, Haddonfield, supra.* Since the dismissal of the plaintiff's complaint is being sustained, there is no occasion for considering the intervening defendants' cross-appeal from the judgment dismissing their counterclaim and cross-claim.

Affirmed, without costs.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.