238 N.J. Super. 70 (1990)
568 A.2d 1227
CHARLES C. WIDDIS, P.E., L.S., PETITIONER-APPELLANT,
v.
PUBLIC EMPLOYEE RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 20, 1989.
Decided January 25, 1990.
*71 Before Judges PETRELLA, O'BRIEN and STERN.
Boglioli & O'Mara, attorneys for appellant (Bernard F. Boglioli, Jr., on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Michael R. Clancy, Assistant Attorney General, of counsel, Francine W. Kaplan, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Petitioner-appellant Charles C. Widdis appeals from a final determination of the Board of Trustees (Board) of the Public Employees Retirement System (P.E.R.S.) which declared that he had forfeited certain pension benefits. The Board rejected the initial decision of the Administrative Law Judge (ALJ) which would have only partially forfeited deferred retirement benefits relating to Widdis's service with Howell Township. Although the Board accepted and adopted the findings of fact of the ALJ, it modified his conclusion that Widdis was entitled to deferred retirement benefits under N.J.S.A. 43:15A-38(b) on the basis of service rendered to the Borough of Atlantic Highlands from January 1, 1964 to January 1, 1978 and to Howell Township from January 1, 1961 to June 1, 1980. In modifying that recommendation the Board determined that retirement benefits would only be paid to Widdis based upon his employment with the Borough of Atlantic Highlands. All retirement benefits from his positions with Howell Township and Long Branch[1] were held subject to forfeiture under the statute.
*72 Widdis argues on appeal that P.E.R.S. improperly interpreted N.J.S.A. 43:15A-38 as requiring a forfeiture of pension rights with respect to his Howell Township employment, despite his subsequent conviction of a crime.
The facts were stipulated at the hearing before the ALJ. Widdis was born on December 5, 1924. On January 1, 1961 he was appointed township engineer for Howell Township and was successively reappointed each year thereafter until 1981 when he was appointed for three years. He resigned his position on August 26, 1981. Widdis also served as building inspector and zoning officer in Howell Township. During this period Widdis was also employed by the Borough of Atlantic Highlands as borough engineer from January 1, 1964 until January 1, 1978 when he was not reappointed. On July 1, 1974 Widdis became city engineer for the City of Long Branch when he was appointed for a four year term and subsequently reappointed for another four years in 1978. His employment with Long Branch terminated when he was not reappointed in 1982.
Widdis was compulsorily enrolled in P.E.R.S. on April 1, 1966 with a retroactive enrollment date of May 1, 1961. On October 6, 1972 he completed a purchase of credit for his prior public employment from May 1, 1961 to April 1, 1966 and became a multiple enrollee of P.E.R.S. since he worked in more than one P.E.R.S. position with more than one public employer at the same time. As of June 30, 1982 when he had terminated all his public employment he had 21 years, 3 months of service credit in the fund.
On March 23, 1987 Widdis applied for veteran's retirement benefits. When it was determined by the Board that he was ineligible for veteran's retirement[2] under N.J.S.A. 43:15A-61 he withdrew his application and applied for deferred retirement under N.J.S.A. 43:15A-38.
*73 While Widdis was employed by these various public employers he also operated a private practice doing engineering and surveying work for private companies, boards of education, and public organizations with the knowledge of the various townships. Widdis's private office was located in Long Branch. During the course of this business he prepared documents which subsequently came before him for review in his official capacity. See Virginia Construction Corp. v. Fairman, 39 N.J. 61, 64-65, 187 A.2d 1 (1962) (such a practice had been commonplace in the past but was now disapproved).
In August 1981 a newspaper reporter contacted Widdis about certain transactions and statements made at a township public meeting relating to a landfill operated in Howell Township. Certain reports had been filed under Widdis's letterhead with the New Jersey Department of Environmental Protection (DEP) and the Federal Environmental Protection Agency (EPA) which dealt with various surveys conducted by Widdis's private office for a privately operated waste disposal site. Widdis had apparently made surveys of the site at an earlier time, and when the DEP and EPA imposed new regulations for the disposal site, his office was again contacted to do the surveying work. A controversy arose over operations of the landfill and Widdis's name was mentioned in regard to the work his office had done. As a result of an ensuing controversy, the Mayor of Howell Township asked Widdis to resign or be suspended. Widdis was suspended without pay for about two weeks and ultimately resigned. Widdis testified he was never indicted in connection with this incident.
This mixing of private practice and public service led to an investigation and a grand jury indictment (30 counts) on April 23, 1982 charging Widdis with misconduct in office, official misconduct, conspiracy, falsifying records and solicitation which allegedly occurred from December 1977 through November 1981 in Howell Township and Long Branch.
*74 A second indictment in 21 counts was handed up on June 18, 1982 charging Widdis with forgery, falsification of records and knowingly soliciting or agreeing to accept a benefit while serving as a public servant during the period April 1978 through November 1981 in Howell Township and Long Branch.
A third indictment was handed up on July 9, 1982 which contained 12 counts and charged Widdis with misconduct in office, official misconduct and conspiracy during the period December 1977 through April 1981 in Howell Township, Long Branch and Middletown Township.
Widdis entered a not guilty plea to all counts of all indictments. However, on October 5, 1982 he retracted his plea of not guilty to one count of the first indictment which charged him with misconduct in office in Long Branch during 1980 by reviewing in his official capacity a map or plan which he had prepared for a private client. He also retracted his not guilty plea to one count of the third indictment which charged him with official misconduct during the period June 1980 through March 1981 in Howell Township or Middletown Township, or both of them, by reviewing maps, plans or other documents that he had prepared for the application of a private client.
Widdis was sentenced on January 7, 1983 pursuant to a judgment of conviction also entered on that date. He was ordered to pay a $5,000 fine, costs, a $25 Violent Crimes Compensation Board (V.C.C.B.) penalty and $10,000 in restitution to Howell Township and a $5,000 fine, a $25 V.C.C.B. penalty plus $5,000 restitution to Long Branch with respect to the respective convictions based on his plea. All other charges were dismissed. The judge also ordered that Widdis would "forfeit any and all public offices, positions and employment" and "shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any other of its administrative or political subdivisions." We are advised that all the fines imposed as well as the restitution have been *75 timely paid. Except as previously mentioned, Widdis has never been convicted or charged with any other criminal offense.
The ALJ in an initial decision dated December 19, 1988 recommended partial forfeiture of Widdis's service credit earned with Howell Township and nonforfeiture with respect to his service with Atlantic Highlands. As noted, the Board differed with the ALJ's recommended decision with respect to Howell Township and determined that all Widdis's deferred retirement benefits relating to Howell Township would be forfeited. This included the period of service from 1961 to June 1980 which was prior to the time period covered by Widdis's guilty plea with respect to charges relating to his tenure in office in Howell Township.
The ALJ found that Widdis was not entitled to any deferred retirement benefits with reference to Long Branch because he only served eight years with the city, and 10 years of service was required under N.J.S.A. 43:15A-38 to be eligible for a deferred retirement. The ALJ also found that the reason Widdis was not reappointed by Long Branch was related to the pendency of criminal charges directly touching his employment with the city. The ALJ also noted that even if Widdis had been reappointed he would have construed N.J.S.A. 2C:51-2 to require that Widdis would have forfeited his position upon conviction.
The ALJ applied the balancing test in Uricoli v. Police & Firemen's Retirement System, 91 N.J. 62, 77-78, 449 A.2d 1267 (1982), in considering Widdis's employment with Howell Township. He found that a partial forfeiture was warranted with respect to Widdis's pension credits earned while he was an employee of Howell Township. Accordingly, the ALJ recommended that Widdis forfeit all pension benefits earned from commencement of the wrongful conduct on June 1, 1980 to the end of his service with Howell Township on August 25, 1981. This period covered the time frame in the guilty plea with *76 respect to his service in Howell Township as well as Long Branch.
In its findings the Board observed that a fundamental purpose of providing pensions to public servants is to secure good behavior during service. The Board noted that a legislative provision providing for forfeiture of deferred retirement benefits operates as "both a deterrent against committing misdeeds relating to employment and as an inducement to continued faithful, diligent and efficient public service." The Board concluded:
Permitting appellant to receive Deferred Retirement benefits based upon his service to Howell Township would violate the foregoing legislative policies identified by the Supreme Court. Appellant committed misdeeds related to his employment and then continued in public service in Howell Township for only a few months after committing his infractions. He was convicted of official misconduct occurring between June 1980 and March 1981 in Howell Township, and he resigned from his position with the Township on August 26, 1981. Thus, this case does not present the situation that the Legislature deemed inappropriate for mandatory forfeiture: where the employee has retired in due course and has `rendered numerous years of faithful and diligent service after a prior infraction.' Uricoli, 91 N.J. at 75, n. 5 [449 A.2d 1267]. Instead, appellant retired shortly after committing an infraction directly related to his employment.
Moreover, we cannot ignore the fact that appellant would have been removed from his Howell Township employment for cause, and thereby clearly would have been ineligible for Deferred Retirement benefits, if he had stayed in employment until after he was indicted or convicted. As noted above, with regard to petitioner's Long Branch service, the Legislature could not have intended that an employee could avoid the forfeiture mandated by N.J.S.A. 43:15A-38 by resigning shortly before being convicted of misconduct in office. The same result should apply where as here, the employee resigns shortly before being indicted for a crime for which he is ultimately convicted and which requires forfeiture of employment. In both cases the legislative purpose is to deny Deferred Retirement benefits to one who has committed job-related misconduct. Since in either situation the employee would have been removed from employment if he had not resigned, N.J.S.A. 43:15A-38 requires forfeiture of pension benefits, regardless of the timing of the resignation.
Eligibility for early retirement benefits (also known as deferred retirement) is set forth in N.J.S.A. 43:15A-38 which reads in pertinent part:
Should a member of the Public Employees Retirement System, after having completed 10 years of service, be separated voluntarily or involuntarily from *77 the service, before reaching service retirement age, and not by removal for cause on charges of misconduct or delinquency, such person may elect to receive: . ..
(b) A deferred retirement allowance, ....
Although we certainly do not condone the obvious conflict of interest situations in which Widdis placed himself by his actions, see Virginia Construction Corp. v. Fairman, supra (39 N.J. at 64-65, 187 A.2d 1), our determination of this appeal must be based on an interpretation of this statute in harmony with accepted legal principles.
Obviously, vested[3] pension rights are involved here, despite the fact that a "deferred retirement allowance" is involved. See N.J.S.A. 43:15A-38; Uricoli v. Police & Firemen's Retirement System, supra (91 N.J. 62, 70-71, 74 n. 3, 449 A.2d 1267); Masse v. Public Employees Retirement System, 87 N.J. 252, 260-264, 432 A.2d 1339 (1981). Deferred compensation benefits have been earned by an employee and are no longer considered a gratuity.[4] As we said in Fiola v. N.J. Department of the Treasury, 193 N.J. Super. 340, 347-348, 474 A.2d 23 (App.Div. 1984):

*78 It is virtually axiomatic that statutory pension provisions are to be liberally construed in favor of public employees and that pensions represent not merely the gratuity of a benevolent governmental employer but rather that they constitute deferred compensation earned by the employee during his years of service. See Masse v. Public Employees Retirem. Sys., 87 N.J. 252, 259-261 [432 A.2d 1339] (1981); Uricoli v. Police & Fire Retirem. Sys., 91 N.J. 62, 70-73 [449 A.2d 1267] (1982). Forfeiture of earned pension rights, therefore, constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loath to permit even in the case of employee misconduct unless that penalty has been clearly mandated by the Legislature. See e.g., Masse v. Public Employees Retirem. Sys., supra; Uricoli v. Police & Fire Retirem. Sys., supra; Eyers v. Public Employees' Retirem. Sys., 91 N.J. 51 [449 A.2d 1261] (1982).
Thus, when considering forfeiture provisions which adversely impact on vested rights, strict construction of the statute is required. Geller v. Dept. of the Treasury of New Jersey, 53 N.J. 591, 597-598, 252 A.2d 393 (1969); Sutherland, Statutory Construction, § 73.03 (1986). See Eyers v. Public Employees' Retirement System, 91 N.J. 51, 56-57, 449 A.2d 1261 (1982). As Uricoli points out, not only is there the forfeiture aspect, but there is a recognition that a public pension is remedial and shall be liberally construed and administered in favor of the employees. 91 N.J. at 76, 449 A.2d 1261. N.J.S.A. 43:15A-38 does not specifically provide that if a member of P.E.R.S. is voluntarily separated from his service by resignation, non-reappointment or the like, but is later charged with and convicted of an offense which would have required his removal for cause, forfeiture may be nonetheless imposed with respect to vested rights to a deferred retirement allowance.
Grimes v. Bd. of Trustees of Public Employees' Retirement System, 8 N.J.A.R. 7 (1984), relied on by the ALJ is readily distinguishable. In that case the pension applicant had been convicted by a jury of certain crimes touching on his office, but resigned his office before the date set for sentencing. Technically, the conviction would not have been considered "final" before a sentence had been imposed and a judgment of conviction entered. The time for appeal does not normally begin to run until defendant is sentenced. Moreover, the Grimes decision is not binding on us. In the two unreported Appellate *79 Division opinions relied upon by P.E.R.S. the public employees in each case had been convicted before they submitted retirement applications.
Although there may be some facial appeal in the Board's rationale, the plain wording of the statute does not authorize the result ordered by the Board. Although due deference is generally accorded to the Board's interpretation of the applicable pension laws by the agency charged with their administration, Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973); Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); Fiola v. N.J. Department of the Treasury, supra (193 N.J. Super. at 347, 474 A.2d 23), since a question of law is involved we must consider whether the Board's determination is consistent with the statutory language. We conclude it is not and are thus constrained to reverse.
There is of course, under our jurisprudence, a presumption of innocence when a person is indicted or charged with a crime. Bell v. Wolfish, 441 U.S. 520, 532, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447, 464 (1979); State v. Humphreys, 101 N.J. Super. 539, 544, 245 A.2d 40 (App.Div. 1968), aff'd in part, rev'd in part 54 N.J. 406, 255 A.2d 273 (1969). Hence, until his conviction, Widdis was cloaked with that presumption of innocence. Since Widdis was not "removed from office" we find nothing to preclude his voluntary retirement before an adjudication of guilt in a court of competent jurisdiction. We recognize that this may result in avoidance of forfeiture by early resignations. However, the legislation does not preclude this where the employee is eligible for a pension, and there may be a question whether that could be constitutionally accomplished. It is for the Legislature to specifically qualify a person's entitlement if it wishes to attempt to strip vested pension rights from a member who has not yet been convicted of any crime. See Masse v. Public Employees Retirement System, supra (87 N.J. at 263, 432 A.2d 1339). The operative phrase in N.J.S.A. 43:15A-38 is "not by removal from office." This contemplates *80 actual removal and not the mere making of allegations or the filing of charges, following which the employee, being eligible for a pension, voluntarily resigns.
The forfeiture provisions of N.J.S.A. 43:15A-38 are invoked when a member is separated "involuntarily" from service after he has been convicted of a crime or pled guilty to a crime. By a proper reading of the statute, and applying strict construction because forfeiture is involved, the exception clause is limited to involuntary separation. It reads "and not by removal for cause on charges of misconduct or delinquency ..." This clause of necessity only modifies the phrase "involuntarily from the service" because a person separated voluntarily has obviously not been removed and has not been separated "by removal for cause on charges of misconduct or delinquency." To "be separated voluntarily or involuntarily" presents the alternative situations where on the one hand a member voluntarily retires or quits, or on the other hand is fired, suspended or forced to resign. Involuntary termination means just that, that the member had been fired or forced to resign. The phrase "not by removal for cause on charges of misconduct or delinquency" then obviously refers solely to removal from office involuntarily, and not because a person resigns or quits beforehand.
In support of its argument that our courts have recognized that even if an employee has been granted a retirement, those benefits can be suspended if subsequently the employee is indicted on crimes that occurred during that prior public employment, P.E.R.S. cites our decision in Mount v. Trustees of Pub. Emp. Retirement Syst., 133 N.J. Super. 72, 335 A.2d 559 (App.Div. 1975), decided seven years before Uricoli. We there held, with a dissent,[5] that although the statutes governing administration of the P.E.R.S. did not explicitly make honorable service a condition precedent to the grant of a pension to public employees, this was an implicit requirement. Id. at 81, 335 *81 A.2d 559. We held in Mount that three requirements must be met in order for a public employee to qualify for a pension benefit: age; length of service; and honorable service. Id. at 80, 335 A.2d 559. With respect to honorable service we said that:
To bestow it [a pension] upon one `whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency' and `burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed by him.' [Citation omitted]. [Id. at 81, 335 A.2d 559].
The majority in Mount held that even despite the fact that the public employee there had obtained the requisite age and length of service and retired, the pension board could consider the pending indictment and suspend pension payments pending resolution of the indictment. We noted that "if prior to retirement" (ibid.) he is guilty of misconduct of a disqualifying character his pension would be forfeited:
This is so because, as the court said in Ballurio v. Castellini, supra, [29 N.J. Super. 383, 102 A.2d 662 (App.Div. 1954)] the utility of the requirement for honorable service
* * * would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefeasible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime. [Citation omitted]. [Mount, 133 N.J. Super. at 82, 335 A.2d 559].
In reaching the conclusion in Mount that forfeiture was required we relied on Plunkett v. Pension Commissioners of Hoboken, 113 N.J.L. 230, 173 A. 923 (Sup.Ct. 1934), aff'd o.b., 114 N.J.L. 273, 176 A. 341 (E. & A. 1935). That case involved a specific statute requiring honorable service by members of the fire department as a condition to a pension. Moreover, Plunkett first submitted his retirement request after he was convicted. 113 N.J.L. at 231. Aside from the fact that this case is thus distinguishable from the one before us, we do not consider that case as binding authority in the present circumstances. See Uricoli v. Police & Firemen's Retirement System, supra (91 N.J. at 67, 449 A.2d 1267).
*82 However, we consider Mount to have been further refined in Uricoli v. Police & Firemen's Retirement System, supra (91 N.J. at 68-69, 449 A.2d 1267), where it was pointed out that more recent decisions of our Supreme Court "expressly embrace a more flexible approach in determining whether the character of misconduct of public employees will justify the deprivation of pension benefits." Justice Handler pointed out in a footnote:
It is clear that the Legislature may have had rational reasons for singling out early retirement benefits as the only occasion on which to attach a provision for forfeiture. As we recognized in Masse, [v. Public Employment Retirement System, 87 N.J. 252, 432 A.2d 1339 (1981)], with respect to misconduct unrelated to the employment, if it is incongruous to declare a forfeiture of pension for employees who have committed certain misdeeds, that `incongruity is heightened when the public employee continues ... to render service that was creditable for pension purposes after the conviction.' Masse, 87 N.J. at 264, 432 A.2d 1339. Thus, the early retirement forced by removal for cause differs from the case of an employee who has retired in due course and is subsequently found to have committed a misdeed. In the latter case, an employee could have well rendered numerous years of faithful and diligent service after a prior infraction. To punish both equally could well operate to remove an inducement, through its deterrent impact on others, to render future honorable service after having made one early mistake. Perhaps more importantly, the additional sanction of forfeiture seems all the more harsh where the employee's single mistake was potentially sandwiched in the middle of over 25 years of exemplary service as opposed to at the end of only 15 years. Moreover, the need for punishment  concededly a primary goal of the forfeiture  is also proportionately reduced where the employee has rendered more years of faithful and diligent service [Uricoli, supra 91 N.J. at 74-75 n. 5, 449 A.2d 1267].
In Uricoli the 1976 conviction for malfeasance in office occurred after 23 years of otherwise honorable service with the police force. Uricoli applied for accidental disability retirement in 1979, and this was denied by the pensions board based on the 1976 conviction. The Supreme Court, by a 4-3 vote, reversed the denial of an accidental disability pension on that ground. It noted that under these facts Uricoli could properly have been denied early retirement benefits due to the statutory forfeiture provisions (see N.J.S.A. 43:16A-11.2 and 43:15A-38) regarding such pensions when a person has been "removed for cause on charges of misconduct or delinquency." Id. at 74 n. 4, 449 A.2d 1267.
*83 Widdis had sufficient years of prior honorable service with Howell Township to have earned retirement as of the date of the wrongdoing. This also must be taken into account. Applying the rationale of Uricoli to the case before us leads us to conclude that the Board incorrectly denied Widdis a service pension for service with Howell Township.
Reversed and remanded with direction to P.E.R.S. to grant the deferred retirement allowance for Widdis's service with Howell Township in accordance with the recommended decision of the ALJ.
NOTES
[1] On this appeal Widdis has not challenged the ruling with respect to Long Branch. Widdis had eight years of service for Long Branch.
[2] Apparently Widdis had not met the age requirement to be eligible for veteran's retirement.
[3] The caption of this section of the statute [although not a part of the statute (N.J.S.A. 1:1-6)] is "Vesting."
[4] We understand that the pension plans administered by the State are "qualified plans" under the Internal Revenue Code and Regulations. See 26 U.S.C.A. § 414(d). The effect of forfeitures in relation to continued plan qualifications has not been raised as an issue, but there may be a danger to continued qualification of those pension plans under the Internal Revenue Code if "vested" rights are adversely affected in a manner not permitted by federal law. See 26 U.S.C.A. §§ 401, 410 and 411. As far as we can determine the vesting provisions of the Internal Revenue Code are applicable. However, in view of the stated basis for our decision we have not required briefing of this issue and reserve it for another day.

We note that under the Employee Retirement Income Security Act § 1001 et seq. ("ERISA") so-called "bad-boy" provisions for forfeiture are curtailed and severely restricted. See 29 U.S.C.A. §§ 1053 and 1054. This seems to reflect a policy of treating pensions as additional compensation and protecting vested rights. Parenthetically, governmental retirement plans appear to be exempt from the provisions of ERISA, see 29 U.S.C.A. § 1003.
[5] Although there was a partial dissent as to the lack of a hearing we find no subsequent history for that appeal. But see Uricoli, supra (91 N.J. at 66 n. 1, 449 A.2d 1267).