815 A.2d 997

CAROL DEBELL, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM (PERS), RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 30, 2002—Decided February 13, 2003.

462

Before Judges PETRELLA, LINTNER and PARKER.

*Gallo & Gallo*, attorneys for appellant (*Kenneth T. Gallo*, of counsel and on the brief).

*David Samson*, Attorney General of New Jersey, attorney for respondent (*Patrick DeAlmeida*, Deputy Attorney General, of counsel; *Susanne Culliton*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PARKER, J.A.D.

Petitioner appeals from a decision by the Board of Trustees of the Public Employees' Retirement System (PERS) partially for-

feiting her pension based upon her conviction for theft by deception, *N.J.S.A.* 2C:20–4.

The matter was referred to the Office of Administrative Law (OAL) on petitioner's appeal and was heard by an Administrative Law Judge (ALJ) who rendered an initial decision on August 16, 2001, recommending partial forfeiture. Petitioner submitted a letter of exceptions on August 30, 2001, in which she argued, among other issues, that (1) forfeiture of pension benefits results in double jeopardy; and (2) the New Jersey forfeiture statute is preempted by the vesting provisions of the Internal Revenue Code (IRC). Petitioner's arguments were rejected by the PERS Board and the ALJ's Initial Decision was adopted on September 20, 2001.

The facts elicited at the hearing before the ALJ are as follows. Petitioner began employment at Bergen Pines County Hospital on January 11, 1982. She was a registered nurse assigned to the psychiatric jail unit. In 1989, she began having financial difficulties and a friend told her that Dr. Carl H. Lichtman could help her with her financial concerns. Petitioner acknowledged that she was fully aware that this "help" actually involved participating in an insurance fraud scheme, whereby Lichtman submitted fraudulent claims to plaintiff's health insurance carrier, the State Health Benefits Program, and split the proceeds with her. Petitioner continued in this scheme with Lichtman until the scheme was discovered in 1995. She received numerous checks from the insurance company during that time and cashed them all. In 1996, she was formally accused of third degree theft by deception and pled guilty in Bergen County Superior Court. She was sentenced on June 6, 1997, to three years probation on the condition that she pay restitution in the amount of $28,208.

At the conclusion of the hearing, the ALJ considered the eleven factors established by the Supreme Court in *Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 91 *N.J.* 62, 449 *A.*2d 1267 (1982), codified in *N.J.S.A.* 43:1–3, and concluded that the undisputed facts demonstrated that petitioner willingly participated "in a criminal scheme to submit fraudulent insurance claims and to

receive kick backs from Dr. Lichtman totaling $28,028." The ALJ found that petitioner intended to defraud the State Health Benefits Program by submitting the false claims, and that there was a nexus between the theft and her nursing duties because she "would not have been able to submit fradulent [sic] claims to the Plan unless she worked as a nurse at the Bergen Pines County Hospital." After evaluating the eleven *Uricoli* factors, the ALJ determined that "petitioner's betrayal of her public trust outweighs the mitigating factors and warrants a partial forfeiture of her pension from March 1, 1989 to April 30, 1997, a total of 8 years and 2 months."

In this appeal, petitioner argues: (1) the forfeiture statute, *N.J.S.A.* 43:1–3, violates the double jeopardy provision of the New Jersey Constitution; (2) the forfeiture statute violates the supremacy clause of the *U.S. Const.*, art. VI, cl. 2;[1] and (3) the forfeiture statute does not apply to the facts of this case.

Petitioner did not raise her constitutional arguments before the ALJ but addressed them in her exceptions to the ALJ's initial decision. We reject all of her arguments and affirm the PERS decision for the reasons set forth herein.

■ We have previously addressed petitioner's argument that forfeiture of her public pension constitutes double jeopardy under the *New Jersey Constitution,* art. I, ¶ 11. In *LePrince v. Bd. of Trs., Teachers' Pension Fund,* 267 *N.J.Super.* 270, 631 *A.*2d 545 (App.Div.), *certif. denied,* 134 *N.J.* 482, 634 *A.*2d 528 (1993), *cert. den.* 510 *U.S.* 1119, 114 *S.Ct.* 1072, 127 *L.Ed.*2d 390 (1994), we held that forfeiture of a public pension because of a criminal conviction relating to public employment does not constitute double jeopardy. *Id.* at 277, 631 *A.*2d 545. "Full or partial forfeiture of pension rights is based on the employee's violation of the implied condition that the employee render honorable service." *Id.* at 276, 631 *A.*2d 545. Pension forfeiture is a civil penalty.

---

[1] Petitioner incorrectly identified the supremacy clause as part of the Sixth Amendment. The supremacy clause is found at *U.S. Const.* art. VI, cl. 2.

*State v. Darby,* 246 *N.J.Super.* 432, 445–46, 587 *A.*2d 1309 (App. Div.), *certif. denied,* 126 *N.J.* 342, 598 *A.*2d 898 (1991). It is not automatic but dependent upon "the gravity of the misconduct." *Uricoli, supra,* 91 *N.J.* at 67, 449 *A.*2d 1267. All government pensions are subject to forfeiture for dishonorable service. *Id.* at 66, 449 *A.*2d 1267, citing *Masse v. Bd. of Trs., Public Employees' Ret. Sys.,* 87 *N.J.* 252, 255–56, 432 *A.*2d 1339 (1981) and *Makwinski v. State, Bd. of Comm'rs, Consol. Police & Firemen's Pension Fund, Div. of Pensions, Dep't of Treasury,* 76 *N.J.* 87, 90, 385 *A.*2d 1227 (1978).

■ Petitioner next argues that the forfeiture provisions in *N.J.S.A.* 43:1–3 are preempted by federal law. She contended in her initial brief that:

> The fact of the matter is that by permitting forfeiture as in the case at bar, the State's plan runs afoul of, *inter alia,* 26 *U.S.C.A.* 411(a)(2). That section requires that an employee be entitled to a 100% nonforfeitable right in his or her plan benefits by the end of either a straight 5 year term of service or after a 7 year term of service where the nonforfeitable portion of such plan benefit is increased from 20% in year 3 to 100% in year 7.
>
> In situations where a State Law runs afoul of a Federal Law, the Sixth Amendment [sic] of our U.S. Constitution, applied to the States through the Fourteenth Amendment of our U.S. Constitution, mandates that State Law be superseded.

Since the parties did not explore this issue in depth in their initial briefs and it appeared to be a novel one, we requested supplemental briefs addressing the following questions:

> (1) Whether the PERS pension is exempt from federal forfeiture provisions under the IRC and/or ERISA.
>
> (2) Whether 26 *U.S.C.* Section 411(e)(2) preempts the express exclusion of government plans in 26 *U.S.C.* Section 411(e)(1)(A), *i.e.,* whether government plans are subject to the vesting provisions of 26 *U.S.C.* Section 411(a) irrespective of the express exemption in Section 411(e)(1)(A).

In response, petitioner acknowledged that the PERS pension is a qualified plan under the Internal Revenue Code (IRC), 26 *U.S.C.A.* § 401(a), and exempt from the Employee Retirement Security Act (ERISA), 29 *U.S.C.A.* § 1002(32). She argues, however, that the exemption does not apply to the minimum vesting requirements for government plans. Specifically, petitioner contends that while 26 *U.S.C.A.* § 411(e)(1) generally exempts gov-

ernmental plans from the minimum vesting requirements of § 411(a), § 411(e)(1) states:

The provisions of this section (other than paragraph (2)) shall not apply to—
(A) a governmental plan (within the meaning of section 414(d))....

Paragraph (2) states:

A plan described in paragraph (1) shall be treated as meeting the requirements of this section, for purposes of section 401(a), if such plan meets the vesting requirements resulting from the application of sections 401(a)(4) and 401(a)(7) as in effect on September 1, 1974.

Section 401(a)(7) in effect on September 1, 1974, provided that *employee* contributions to a qualified plan are "nonforfeitable." Petitioner argues that because New Jersey's forfeiture statute, *N.J.S.A.* 43:1–3, does not limit forfeiture to *employer* contributions, it conflicts with federal law and is, therefore, preempted.

The State responds that the 1974 version of § 401(a)(7) is pre-ERISA and is intended to assure that employees with accrued benefits would be fully vested to the extent funded in the event the plan is terminated or contributions are discontinued.

In *Widdis v. Public Employee Ret. Sys.*, 238 *N.J.Super.* 70, 568 *A.*2d 1227 (App.Div.1990), we addressed the question of whether a public employee convicted of official misconduct in office was subject to forfeiture of early or deferred retirement benefits under *N.J.S.A.* 43:15A–38. We held that where the employee "had sufficient years of prior honorable service ... to have earned retirement as of the date of the wrongdoing", the PERS Board must take the honorable service into account and may forfeit only part of the pension. *Id.* at 83, 568 *A.*2d 1227. Here, the Board partially forfeited petitioner's pension pursuant to *N.J.S.A.* 43:1–3,[2] having taken into consideration her years of honorable service.

---

[2] *N.J.S.A.* 43:1–3 sets forth the parameters for forfeiture of regular pension benefits and provides in part: "a. The receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee. b. The board of trustees of any State or locally-administered pension fund or retirement system created under the laws of this State is authorized to order the forfeiture of all or part of the pension or retirement benefit of any member of the fund or system for misconduct occur-

We noted in *Widdis* that under ERISA, "so-called 'bad-boy' provisions for forfeiture are curtailed and severely restricted. See 29 *U.S.C.A.* § 1053 and 1054.... Parenthetically, governmental retirement plans appear to be exempt from the provisions of ERISA, see 29 *U.S.C.A.* § 1003." *Id.* at 77 n. 4, 568 *A.*2d 1227. The exemption issue was not addressed in *Widdis*, however, and we "reserve[d] it for another day." *Ibid.* That day is at hand.

There is no dispute that the PERS plan is a qualified plan under the IRC, and a governmental plan within the meaning of 26 *U.S.C.A.* § 414(d). It also meets the definition of a governmental plan under ERISA, 29 *U.S.C.A.* § 1002(32), and is thereby exempt from ERISA.[3] The express language of 26 *U.S.C.A.* § 411(e)(1) exempts governmental plans from the vesting standards of the code, which would otherwise require that employee contributions be non-forfeitable. Section 401 of the IRC establishes the requirements for a plan to qualify for specified tax benefits. The 1974 version of § 401(a)(7) stated:

(7) A trust shall not constitute a qualified trust under this section unless the *plan* of which such trust is a part provides that, *upon its termination or upon complete discontinuance of contributions under the plan,* the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable. .

[Emphasis added.]

This pre-ERISA section addresses disqualification of the plan for tax benefits upon termination of the *plan* or complete discontinuance of contributions to the *plan.* This provision assures that all employees with accrued benefits would be vested according to the

---

ring during the member's public service which renders the member's service or part thereof dishonorable."

3 ERISA applies to any employee benefit plan established and maintained by a private employer. 29 *U.S.C.A.* § 1003. Governmental plans are defined as those plans "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." Governmental plans are expressly exempt from ERISA 29 *U.S.C.A.* § 1002(32); *Templeton v. Office of Pers. Mgmt.,* 951 *F.*2d 338, 340 (Fed.Cir.1991).

schedule contained in the statute if the *plan* were terminated, not as petitioner argues when an employee-member of the plan is terminated. *See Shields v. C.D. Johnson Marine Serv., Inc.,* 342 *Pa.Super.* 501, 504–505, 493 *A.*2d 701 (1985). If the State were to terminate the PERS plan, § 401(a)(7) would protect public employee members from forfeiture of their vested interests.

We hold, therefore, that 26 *U.S.C.A.* § 411(e)(2) is not applicable to a public employee whose employment is terminated as a direct result of his or her conviction of a crime related to the employment and that New Jersey's forfeiture statute, *N.J.S.A.* 43:1–3, is exempt from the vesting requirements of the IRC and ERISA, unless the *plan* is terminated by the State. *See Templeton v. Office of Pers. Mgmt.,* 951 *F.*2d 338, 340 (Fed.Cir.1991); *Alford v. City of Lubbock, Texas,* 664 *F.*2d 1263, 1271 (5th Cir.) *cert. denied,* 456 *U.S.* 975, 102 *S.Ct.* 2239, 72 *L.Ed.*2d 848 (1982).

Petitioner's final argument is without sufficient merit to warrant further discussion in this opinion. *R.* 2:11–3(e)(1)(E). We affirm on that point essentially for the reasons set forth by ALJ Dwyer in his initial decision dated August 16, 2001.

Affirmed.